BENJAMIN HEDDENDORF V. STATE OF NEBRASKA.

FILED JANUARY 5, 1910.     No. 16,202.

Criminal Law: CONFESSIONS: INSTRUCTIONS. Where the trial court in a prosecution for murder admits proof of a confession challenged by defendant as involuntary, and by instructions submits to the jury on conflicting evidence the issue thus raised, they should be directed to disregard the confession, if they find from all the evidence that it was not voluntarily made.

ERROR to the district court for Harlan county: HARRY S. DUNGAN, JUDGE. *Reversed.*

*J. G. Thompson, John Everson* and *Perry, Lambe & Butler,* for plaintiff in error.

*W. T. Thompson, Attorney General,* and *George W. Ayres, contra.*

ROSE, J.

In a prosecution by the state in the district court for Harlan county, Benjamin Heddendorf, defendant, was convicted of murder in the first degree and sentenced to life imprisonment. As plaintiff in error he now presents for review the record of his conviction.

In the information and testimony William C. Dillon is described as the victim of the homicide. He was a bachelor, and lived alone on his farm north of the village of Stamford in Harlan county, and was found dead in his

house there.   Circumstances indicated that, when sitting
in his own home, he had been shot through a window from
a position outside.   A pane of glass in the window had
been broken and a blanket hung over the aperture.   There
was a wound on the right side of Dillon's head above and
back of the ear.   His watch was missing and some of his
pockets had the appearance of having been rifled.   He
was last seen alive March 17, 1909.   The felony was dis-
covered March 19, 1909.   Suspicion as to the malefactors
fell on two boys in the neighborhood and they were ar-
rested March 20, 1909.   George Critser was one of the
boys and the convicted defendant herein was the other.

At the trial the state was permitted to prove that de-
fendant had confessed his guilt, and it is earnestly argued
that the district court erred in admitting the confession
and in instructing the jury in relation to it.   One of de-
fendant's objections to the confession is that the evidence
does not exclude the hypothesis that it was involuntary,
and the instructions are criticised on the ground that they
permitted the jury to consider the confession as com-
petent evidence of guilt, though it was made in the pres-
ence of the county attorney under circumstances making
it inadmissible.   In examining these questions it will be
necessary to advert to some features of the testimony.
Defendant lived on a farm with his parents near the scene
of the homicide.   When arrested he was a boy of eighteen.
His parents at the time were visiting in Iowa, and in
their absence Critser was with defendant and assisted the
latter in doing chores and other farm work.   There was
some testimony tending to show that defendant was weak-
minded, and his conversation impressed one witness as
that of a boy of ten or eleven.   Defendant had been watch-
ing bloodhounds at work the day he was arrested, and in
this connection the deputy sheriff testified:   "I noticed
that the Heddendorf boy seemed to be quite nervous and
kept following and getting around in a position so he
could keep his eye on the dogs.   I had orders to keep him
back."   The officers and bloodhounds were at defendant's

home, and he was arrested there the same day in the absence of his parents and taken with Critser to Stamford to the offices of a real estate agent. These offices consisted of one large front room into which two small back rooms opened. Here the boys were separated, each being detained in one of the small rooms in custody of the sheriff or his deputy. According to some of the witnesses the boys were thus detained for more than two hours. The county attorney was called, and went back and forth from one of the small offices to the other through the front room. An uncle of defendant testified that the front office and porch were crowded. He also said there was a good deal of excitement, and that the sheriff kept him out of the room in which his nephew was confined. It is conceded that defendant first denied his guilt. One witness said the boy appeared to be nervous and cried before making the confession. It was on the day of his arrest, in one of the back rooms described, that the confession admitted in evidence was first made. Defendant did not have the benefit of counsel until the next day. In one instance the county attorney's version of what took place after he left the room occupied by Critser and approached defendant in the other room is as follows: "I walked in there and said, about like this: 'The other boy has wilted. It is too bad that a thing like this should happen'—and kind of sat and looked at him. He said: 'I had nothing to do with it'—something like that, and I sat there just a second or two and turned around and walked out." The statement that "the other boy has wilted" was untrue, and without knowing its falsity defendant is said to have confessed his guilt. After the county attorney went out, defendant, according to the testimony of the deputy sheriff in charge, said: "If the other boy has wilted, I will tell it all too." One witness said the first question asked by the county attorney was: "You may as well make a clean breast of it, for it will come out anyway, and it will be better for you." The same witness also testified in regard to the confession that Dr. Campbell

asked and defendant answered questions as follows:
"Q. You are telling this because it will make it easier for
you? A. Yes; to make it easier for me. Q. Do you
know what you are doing? Is it the truth? A. I think
so, but I am badly rattled."

There is proof of these conditions, incidents and cir-
cumstances, but the evidence in regard to some of them
is conflicting. As they have been stated they are not in-
tended as a summary of the testimony, but are mentioned
to show the premises from which defendant makes two
arguments. The first of these is that, under the stress
of the events described, defendant's mind was seized with
fear, and that his mental condition was such that the in-
fluence and conduct of the officers destroyed his confes-
sion as competent evidence of his guilt; and the second
is that it was the duty of the court, after having admitted
the confession in evidence, to instruct the jury to dis-
regard it, if found by them to be involuntary. The ad-
mission of the confession was resisted every time it was
offered, and defendant's right to a review of the rulings
of the trial court was preserved by exceptions thereto.
Defendant insists the confession should have been ex-
cluded under the following rule: "A promise of benefit
or favor, or a threat or intimation of disfavor connected
with the subject of the charge, held out by a person hav-
ing authority in the matter, will be sufficient to exclude
a confession made in consequence of such inducement
either of hope or fear." *Heldt v. State,* 20 Neb. 492;
*Ballard v. State,* 19 Neb. 609; *Snider v. State,* 56 Neb.
309.

Though the confession was admitted in evidence, the
trial court did not find as a fact that it was voluntarily
made. The instructions indicate that question was left
to the jury, and that the court intended to adopt the pro-
cedure sanctioned by the following holdings of this court:
"The preliminary examination before the court to ascer-
tain whether or not a confession of a prisoner offered in
evidence is voluntary is properly conducted in the hear-

ing of the jury. After a confession is given in evidence it is for the jury·to determine from all the facts and circumstances proven on the trial, in connection with the confession, whether it was voluntary and what credit should be given it." *Shepherd v. State,* 31 Neb. 389.

Having in the present case admitted defendant's confession in evidence, the trial court instructed the jury in relation thereto as follows: "(24) The court has permitted evidence touching a confession to be introduced in this case, and it is for you to take such evidence, analyze it and weigh it, to see what is the truth of the matter; and, if you find beyond a reasonable doubt that said confession or admission was made, for what purpose, with what motive, and whether or not said confession was true. And you are instructed that, in considering the weight to be given to an alleged confession made by the defendant, you should consider all the testimony in the case up to that point, the position of the defendant at that time, his surroundings, his strength or weakness of mind, as shown by the evidence, and the hopes or fears, if any, that may have influenced the defendant, and whether or not said hopes or fears were the result of any promises or threats on the part of the sheriff, his deputy, the county attorney, or any other person.

"(25) The jury are instructed that if, from the evidence, they believe that the defendant made the confession given in evidence in this case, you should treat and consider such confession precisely as you would any other evidence or testimony; and hence, if the jury believe the whole confession to be true, you should act upon the whole as true. You may believe part of the confession and reject the balance, if you see sufficient grounds in the evidence for so doing. You are at liberty to judge of it like other evidence, in view of all the circumstances of the case as disclosed by the evidence.

"(26) The court instructs you that, where the confession of a person charged with a crime is offered in evidence, the whole of the confession offered in evidence

must be taken together; as well that part, if any, which makes in favor of the accused as that part, if any, which is unfavorable to him."

Instruction 25 was evidently taken from the report of *Furst v. State*, 31 Neb. 403, but in that case the voluntary character of the confession was free from doubt, the court in the opinion saying: "The defendant was not prompted to make the statements he did by any threat, promise, or expectation of hopes or favor. No inducement was held out to him to make an untrue statement." Neither the instructions quoted, nor any other part of the court's charge in the present case, directed the jury to disregard the confession, if found to be involuntary. Defendant was therefore deprived of the full benefit of the rule excluding involuntary confessions. It has been observed in the present case that there was at least some proof tending to show defendant's confession was within the rule stated. Having undertaken to instruct them on that subject, it was incumbent on the trial court to embody in some form in the instructions the substance of the rule that the confession, if found to be involuntary, should not be considered. With this principle left out of the instructions relating to the confession, they were erroneous in a particular affecting a substantial right of defendant in a trial where his life was at stake. In *People v. Howes*, 81 Mich. 396, the court announced the rule applicable, as follows: "Where the question whether alleged statements of a respondent to an officer were freely and voluntarily made is fairly submitted to the jury as an issue of fact, evidence of such statements is competent; but the jury should be instructed to *first* determine such preliminary issue, and, if they find that the statements were made under compulsion or duress, not to consider them in arriving at a verdict. *People v. Barker*, 60 Mich. 277." This is in harmony with a well-settled practice. *Burdge v. State*, 53 Ohio St. 512; *State v. Storms*, 113 Ia. 385; *Roesel v. State*, 62 N. J. Law, 216; *Commonwealth v. Burrough*, 162 Mass. 513; *Commonwealth v. Shew*, 190 Pa. St. 23; *Wilson v.*

*United States,* 162 U. S. 613.    The error was prejudicial, since the confession, if believed, was strong proof of defendant's guilt and a material part of the state's case.

For error in the instructions, the judgment must be reversed, but other assignments will be considered no further than to suggest that some overruled challenges to jurors should have been sustained on account of opinions expressed by them on their *voir dire.*

REVERSED.