CHARLES NICHOLS V. STATE OF NEBRASKA.

FILED DECEMBER 8, 1922.  NO. 22571.

1.  **Criminal Law: TRIAL.** Defendant in a prosecution for murder in the first degree is not entitled to a discharge without a trial on the statutory ground that he was not indicted at the term at which he was held to answer, where the record shows that the felony was committed after the jury called to serve at the present term had been discharged; that by order of the examining magistrate he was held to answer at the next regular jury term, and that at the beginning thereof the information was filed in the district court. Comp. St. 1922, sec. 10044.

2.  **Information: VARIANCE.** In a criminal prosecution an immaterial variance between the complaint before the examining magistrate and the information filed in the district court is not a ground of abatement, where the same crime is properly charged in both.

3.  **Courts: RULES OF PRACTICE.** Under recent statutory and constitutional provisions the supreme court may promulgate rules of practice and procedure not in conflict with existing laws on those subjects. Comp. St. 1922, sec. 10074; Const., art. V, sec. 25.

4.  **Information.** Form of information for murder in the first degree set out in opinion.

5.  **Criminal Law: IMPANELING JURY.** Where impaneled jurors are shown to have the statutory qualifications, and defendant in a criminal prosecution has not exhausted his peremptory challenges, assigned errors in accepting or excusing veniremen are unavailing for the purpose of reversing his conviction.

6.  **Witnesses: PRIVILEGED COMMUNICATIONS.** Where a communication by a patient to his physician is not necessary and proper to the discharge of the latter's professional duties or services, it is not privileged within the meaning of the statute forbidding the disclosure of confidential communications between physician and patient. Comp. St. 1922, sec. 8840.

7.  **Criminal Law: INTENT: HARMLESS ERROR.** Defendant in a criminal prosecution may testify directly to his intention, if it is an element of the crime charged, and where he does so and the answer to the question calling for his conclusion remains in the record unchallenged, a mere ruling subsequently sustaining an exception to the question is not necessarily a prejudicial error.

8.  **Homicide: SUFFICIENCY OF EVIDENCE.** Evidence discussed in the opinion *held* sufficient to prove the criminal intent, the premedi-

tation, the deliberation, and the other elements essential to a conviction for murder in the first degree.

ERROR to the district court for Cheyenne county: J. LEONARD TEWELL, JUDGE. *Affirmed: Sentence reduced.*

*J. E. Willits,* for plaintiff in error.

*Clarence A. Davis,* Attorney General, and *C. L. Dort,* contra.

Heard before MORRISSEY, C. J., LETTON, ROSE, ALDRICH, FLANSBURG and DAY, JJ., REDICK and SHEPHERD, District Judges.

ROSE, J.

In a prosecution by the state in the district court for Cheyenne county, Charles Nichols, defendant, was convicted of murder in the first degree and for that felony was sentenced to suffer the penalty of death. As plaintiff in error he presents for review the record of his conviction.

The first assignment of error challenges the overruling of a plea to discharge defendant on the ground of delay in the filing of the information. A statutory provision authorized a recognizance requiring accused to appear forthwith before the district court, if in session. Laws 1915, ch. 162. This, however, applied to a bailable offense, and not necessarily to a charge of murder in the first degree. Another statutory provision declares:

"Any person held in jail charged with an indictable offense shall be discharged if he be not indicted at the term of court at which he is held to answer." Comp. St. 1922, sec. 10044.

This applies to prosecutions by information also. Defendant was not entitled to a discharge. He shot and killed Emma Carow, June 17, 1921. The complaint charging him with murder in the first degree was filed with the county judge as an examining magistrate June 21, 1921. Defendant was arraigned the same day and

pleaded not guilty. He waived preliminary examination and was committed to prison without bail "for his appearance before the next jury term of the district court," not at the April term, which convened April 25, 1921, and adjourned July 25, 1921. The jury for the April term had been excused May 14, 1921, prior to the homicide. The transcript of the preliminary proceedings before the examining magistrate was filed in the district court June 23, 1921. The next regular or October jury term convened October 17, 1921, and adjourned December 31, 1921. This is the term at which defendant was "held to answer." The information was filed in the district court October 17, 1921, during the term at which defendant was required to appear, and the trial began October 20, 1921, and lasted three days. The sentence was pronounced October 24, 1921. Under the circumstances the committing magistrate was not required to bind defendant over to the April term. He was properly "held to answer" at the next or October term. The information was filed at the beginning thereof within the time limited by law. There was clearly no error in overruling the plea to discharge defendant without a trial.

The next assignment of error is based on the overruling of a plea in abatement. It is contended that the prosecution should have been abated on the ground of a variance between the complaint before the examining magistrate and the information filed in the district court. The import of the argument under this head is that the preliminary complaint charged that defendant assaulted Emma Carow with the intention of killing himself, while the information on which he was tried accused him of making the assault with intent to murder her; the deduction being that, on the latter charge, there was no preliminary hearing or waiver thereof, or opportunity to plead thereto before the examining magistrate, and that therefore the plea in abatement should have been sustained. This is a technical point without merit. It grows out of an obvious reference in a single place in the

preliminary complaint to the accused instead of the victim of the homicide. Both the original complaint before the examining magistrate and the information subsequently filed in the district court charge defendant with murder in the first degree. The inaccuracy of the reference was perfectly plain on the face of the complaint and did not eliminate a material fact or mislead or prejudice defendant in the slightest degree.

Instead of a short form, charging the felony in simple and direct language without unnecessary details, repetitions or other superfluous matter, the county attorney felt called upon to use a form long sanctioned by the judiciary in attempting to observe portions of the English common law adopted by the legislature of Nebraska. The information, though valid and sanctioned by precedent, is not in a form suited to present conditions. It is as follows:

"In the District Court of Cheyenne County, Nebraska.

"The State of Nebraska,
          Plaintiff,

          vs.          Information.

"Charles Nichols,
          Defendant,

"Now, in this October, 1921, regular Term of the District Court, of Cheyenne County, Nebraska, duly convened herein, on the 17 day of October, in the year of our Lord, One Thousand Nine Hundred Twenty-one, comes into Court, Allen E. Warren, the duly elected, qualified and acting County Attorney of Cheyenne County, Nebraska, and for and in behalf of and in the name of the State of Nebraska, gives the Court to understand and be informed, that Charles Nichols, on or about the 17 day of June, 1921, in the County of Cheyenne and the State of Nebraska, aforesaid, then and there being, in and upon one Emma Carow, then and there being, unlawfully, wilfully, purposely, feloniously and of his deliberate and premeditated malice, did make an as-

sault, with the intent, her, the said Emma Carow, unlaw-
fully, purposely and of his deliberate and premeditated
malice, to kill and murder, and that the said Charles
Nichols, a certain pistol, commonly called a 'revolver,'
then and there loaded and charged with gunpowder and
divers leaden bullets, which said pistol, commonly called
a 'revolver,' he, the said Charles Nichols, in his hand or
hands, then and there had and held, then and there,
unlawfully, wilfully, purposely, feloniously and of his
deliberate and premeditated malice, did discharge and
shoot off, to, at, against and upon, the said Emma Carow
and that the said Charles Nichols, with the leaden bul-
lets, aforesaid, out of the pistol, aforesaid, commonly
called a 'revolver,' then and there, by force of the gun-
powder, aforesaid, by the said Charles Nichols, discharged
and shot off, as aforesaid, then and there, unlawfully,
purposely, feloniously and of his deliberate and premedi-
tated malice, did strike, penetrate and wound, with
intent aforesaid, thereby, then and there giving, to the
said Emma Carow, in and upon the left side of the body
and in and upon the left side of the head, of her, the said
Emma Carow, with the intent aforesaid, thereby, then
and there, to give to her, the said Emma Carow, in and
upon the left side of the body and in and upon the left
side of the head, of her, the said Emma Carow, with the
leaden bullets, aforesaid, so as aforesaid, discharged
and shot out of the pistol, commonly called a 'revolver,'
aforesaid, by force of the gunpowder, aforesaid, by the
said Charles Nichols, in and upon the left side of the body
and in and upon the left side of the head, of her, the
said Emma Carow, two mortal wounds, each, circular in
form, about one-half of an inch in diameter and of the
depth of five inches, of which said mortal wounds, she, the
said Emma Carow, instantly died, and so the said Allen
E. Warren does say that the said Charles Nichols, her,
the said Emma Carow, unlawfully, wilfully, purposely,
feloniously and of his deliberate and premeditated malice,
did kill and murder, contrary to the form of the statute,

in such case made and provided and against the peace
and dignity of the State of Nebraska.

"ALLEN E. WARREN,
"County Attorney of Cheyenne County, Nebraska."

"The State of Nebraska,⎫
                       ⎬ss.
  Cheyenne County,     ⎭

"Allen E. Warren, of lawful age, being first duly
sworn, deposes and says, that he is the duly elected, quali-
fied and acting county attorney of Cheyenne County, Ne-
braska, and that he has made and read the foregoing
information and that the offense charged therein, is true,
as he verily believes and that the said offense contained
and charged in said information, is true, as he verily
believes.

"ALLEN E. WARREN.
"Subscribed in my presence and sworn to before me,
this 17 day of October, 1921.
  (Seal)                    "ISOLA B. WASSON,
    "Clerk of the District Court of Cheyenne County,
      Nebraska."

It was in attempting to follow this complicated form,
giving and repeating unnecessary details, that the com-
plainant before the examining magistrate inadvertently
referred in one place to the accused instead of the victim
of the homicide.   While the charge in the present in-
stance was sufficient notwithstanding the error, justice
is sometimes delayed or defeated by errors in vain and
pompous repetitions found in common-law forms.   The
ancient form used by the county attorney in the present
instance is a relic of times when blood-thirsty rulers,
religious bigots and political tyrants intentionally in-
flicted punishments on innocent victims under false
charges. Those abominations have passed away, but some
of their forms still remain to embarrass the courts in the
administration of justice under new conditions.

The legislature has made provisions for averting some

of the evils resulting from the failure to observe techni-calities of the common law in regard to informations. A statute on this subject provides:

"No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected: First. By omission of the words, 'with force and arms,' or any words of similar import; or, Second. By omitting to charge any offense to have been contrary to a statute or statutes; or, Third. For the omission of the words, 'as appears by the record' nor for omitting to state the time at which the offense was committed in any case where time is not of the essence of the offense; nor for stating the time imperfectly; nor for want of a statement of the value or price of any matter or thing, or the amount of damages, or injury in any case where the value or price, or the amount of damages or injury, is not of the essence of the offense; nor for the want of an allegation of the time or place of any material fact, when the time and place have once been stated in the indictment; nor that dates and numbers are represented by figures; nor for an omission to allege that the grand jurors were impaneled, sworn or charged; nor for any surplusage or repugnant allegation when there is sufficient matter alleged to indicate the crime or person charged; nor for want of the averment of any matter not necessary to be proved; nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." Comp. St. 1922, sec. 10074.

Further means of relief are found in a new constitutional provision declaring:

"For the effectual administration of justice and the prompt disposition of judicial proceedings, the supreme court may promulgate rules of practice and procedure for all courts, uniform as to each class of courts, and not in conflict with laws governing such matters." Const., art. V, sec. 25.

Under the statutory and constitutional provisions now

in force, any properly verified information may be held sufficient, if it states the name and the authority of a qualified informer and facts constituting every element of murder in the first degree as defined by statute and pleads the name of defendant and the district court of competent jurisdiction wherein he is required to answer; the date of filing the information within the time limited by law while the court named is in session at a regular jury term; the time of the fatal assault and the date when the victim of the homicide died therefrom, which must be shown to be within a year and a day; and the place where and the means by which the felony was committed. Tested by these standards the following brief form meets all requirements of the law in a prosecution like the present:

"In the District Court for Cheyenne County, Nebraska.

"The State of Nebraska,
Plaintiff,

v.

"Charles Nichols,
Defendant.

"Allen E. Warren, the duly elected, qualified and acting county attorney of Cheyenne county, Nebraska, prosecuting pursuant to law in the name of and for the state of Nebraska, plaintiff, makes information to the district court for Cheyenne county in session October 17, 1921, at the regular October term of that year, as follows:

"In Cheyenne county, Nebraska, June 17, 1921, Charles Nichols, defendant, feloniously, purposely and of his deliberate and premeditated malice, shot Emma Carow with a revolver, and as a result thereof she died June 17, 1921. Defendant thus committed murder in the first degree.

"ALLEN E. WARREN,
"County Attorney of Cheyenne County, Nebraska.

Nichols v. State.

"The State of Nebraska,⎫
                       ⎬ss. ·
County of Cheyenne,    ⎭

"Allen E. Warren, being duly sworn according to law, says the facts stated in his foregoing information are true as he verily believes.

"ALLEN E. WARREN,

"County Attorney of Cheyenne County, Nebraska.

"Subscribed in my presence and sworn to before me October 17, 1921.

(Seal)                          "ISOLA B. WASSON,

"Clerk of the District Court for Cheyenne County,
     Nebraska."

Many pitfalls will be avoided by omitting unnecessary details, repetitions and other superfluous matter not essential to a proper information or to the protection of accused. Procedure more in harmony with modern conditions will result from reforms which eliminate objectionable technicalities of the common law formerly adopted by the legislature.

Complaint is made of alleged irregularities in selecting the jury. It is insisted that competent veniremen were erroneously excused and disqualified ones accepted. An examination of the record shows that all members of the jury impaneled were qualified according to statutory requirements and established rules of criminal law. Defendant did not exhaust his peremptory challenges and error in impaneling the jury is not shown. This assignment of error is therefore overruled.

An argument of considerable length is directed to the proposition that the trial court erred in permitting a physician to testify to a conversation between himself and defendant in which the latter admitted that he shot both himself and Emma Carow. It is insisted that this testimony was admitted in violation of the statute forbidding the disclosure of confidential communications between physician and patient. Comp. St. 1922, sec.

8840. The physician was called to the scene of the tragedy to attend Emma Carow and arrived a few minutes after she died. He found her on the ground with two bullet holes in her body. Defendant was beside her suffering from self-inflicted bullet wounds. The physician asked him what the shooting was about, and he replied: "Emma and I were supposed to be married tomorrow." He was then asked: "Did you shoot yourself and her?" To this he answered, "I did." This is the conversation said to be privileged. When it took place the relation of physician and patient between the physician and defendant did not exist. The former had been called to perform professional services for Emma Carow, the victim of defendant's homicidal acts. The disclosures by defendant to the physician were not shown to have been made with a view to treatment of the former. After the conversation the physician, prompted by humane consideration under conditions as he found them, voluntarily performed services for defendant. The admission that defendant shot Emma Carow was not a confidential communication necessary and proper to the discharge of professional duties or services on behalf of defendant and was not, therefore, protected by the statute. *Koskovich v. Rodestock,* 107 Neb. 116. Assuming, however, that the evidence should have been excluded, the ruling admitting it would not be reversible error, for the reason that the shooting by defendant was established beyond question by other uncontradicted evidence and was inferable from testimony of defendant himself while on the witness-stand.

The principal reason urged for a reversal is based on the sustaining of an exception to a question calling for direct testimony by defendant that it was not his intention to shoot Emma Carow. In considering this feature of the trial, details of a few facts disclosed by the evidence seem necessary.

Emma Carow, 25 years of age, lived with her widowed mother, Lena Carow, on a farm in Cheyenne county. De-

fendant, 43 years of age, had been in their employ as a
farm hand for several months. During that time he
made his home at the farm-house occupied by the Carows.
Emma and defendant sometimes worked together on the
farm. During the afternoon, June 17, 1921, she went to
a field where he was at work and told him to quit, ter-
minating his employment. The two went separate ways to
the house, Emma in advance. When defendant arrived
he asked for her and was told by her mother that she
was out. He immediately left the house. The Carows
promptly met and decided to start to the home of a
neighbor by the name of Vick, a mile away, and with
that purpose in view got into their automobile. It had
only one seat and this they occupied. Behind the seat
there was an open box and defendant got into it.
When half way to Vick's, he leaned forward and pulled
the key out of the switch, thus stopping the motor. The
Carows got out and started toward Vick's on foot. When
they had gone a short distance defendant called to Emma
to come back; saying he wanted to speak to her. She
did as requested, leaving her mother standing in the
road. A few minutes later, after there had been time
for conversation, he shot Emma twice in different parts
of her body. He also shot himself twice.

The theory of the defense seems to be that defendant
procured and carried the revolver for the sole purpose of
committing suicide; that this purpose was formed as a
result of Emma's refusal to marry him according to
promises to which he testified; that his first shot was
fired at himself and that he did not know what occurred
thereafter. While he was testifying in his own behalf
he was asked: "Did you entertain in your own mind an
intent or thought that you would kill Emma Carow?"
His answer was, "No, sir." This answer was followed
by the sustaining of an exception to the question itself
on the ground that it called for the conclusion of the
witness. Assuming the exception should have been over-
ruled under the principle announced in *Cummings v.*

*State,* 50 Neb. 274, to the effect that a defendant in a criminal prosecution may testify directly to his intention where it is an element of the offense charged, the error was not prejudicial to defendant. By his answer, "No, sir," he told the jury it was not his intention to shoot Emma Carow. The answer was never stricken out of the record and the jury were never directed to disregard it. Prejudicial error in this respect, therefore, is not shown.

It is insisted further that the evidence is insufficient to prove the criminal intent, the premeditation and the deliberation essential to murder in the first degree. The point does not seem to be well taken. Defendant testified that for several months he and Emma Carow had been engaged, and that in the meantime on two or three occasions she had declined to be married at the appointed time. He admitted he had been dismissed as a suitor when discharged as a farm-hand. These experiences, if he told the truth, would naturally imply a warning sufficient to prevent surprise or sudden emotion in the event of a new disappointment of the same kind. Some time elapsed between his rejection in the field and the tragedy in the highway. After he learned his fate as a suitor there was time for reflection before he committed his homicidal acts. In addition, the story of the engagement, though it may be true, is open to suspicion. A sister of Emma Carow testified that the latter had made no preparation for marriage—a circumstance at variance with common experience, if she were engaged. According to the testimony of her mother there was time for conversation after Emma went back to converse with defendant in the highway. When she was a few feet away from him, her mother said, he pointed the revolver at her and fired twice. Two witnesses testified to admissions by him that he first shot her and, distressed by her suffering, shot her again. From all of the evidential facts the jury were at liberty to find a felonious purpose or intention, and deliberation and premeditation beyond a reasonable

doubt. Circumstances indicate that he was in possession of his mental faculties. There was no proof of insanity. While his testimony on direct examination contains a statement that he did not know what occurred after he fired the first shot, his cross-examination indicates the contrary. The evidence is sufficient in every respect to sustain the conviction.

In other assignments of error there is criticism of rulings on evidence, of instructions, and of conduct of counsel, jury and judge. These are all found upon examination to be without merit. Reversible error has not been pointed out. The majority, however, express the following views:

The penalty of death is intended by the law to punish a vicious intent carried into effect by accused after forming and deliberating upon a plan to commit murder. The only time for deliberation in the present instance intervened between the act of accused in calling Emma Carow back to him in the highway and the shooting. The stress of the situation was such as to preclude that cool calculation and consideration which the law contemplates in providing for the extreme penalty. The present case is one wherein justice should be seasoned with mercy.

The sentence of death is reduced to imprisonment for life in the state penitentiary and the conviction affirmed.

AFFIRMED: SENTENCE REDUCED.

ROSE, J.

It seems to me the reasons of the majority for reducing the sentence are not sufficient to justify interference with the penalty fixed by the jury, and I am authorized to say that Letton, J., and Shepherd, District Judge, are of the same opinion.