HANS HANSEN V. STATE OF NEBRASKA.

FILED APRIL 30, 1931. No. 27799.

*Lloyd Crocker, Gray & Brumbaugh* and *Frank V. Lawson,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Homer L. Kyle, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Day and Paine, JJ.

Day, J.

This is a criminal action in which Hansen is charged with murder in the first degree. He was convicted of murder in the second degree and sentenced to 25 years in the penitentiary. He prosecutes proceedings in error to this court.

It is urged that the information does not state facts sufficient to constitute a charge of murder in the second degree and therefore the court was without jurisdiction. This is a question of first concern to this court. That part of the information which charges the crime of murder in the first degree is as nearly in the identical language suggested by this court in *Nichols v. State,* 109 Neb. 335, as the facts would permit. In the *Nichols* case, the court adopted a form of information in criminal cases and under statutory and constitutional provisions promulgated it as a rule of practice for inferior courts. Comp. St. 1929, sec. 29-1501; Const. art. V, sec. 25. The technical rules of the common law as to informations were relaxed by the said court rule. *Morris v. State,* 109 Neb. 412. In *Phegley v. State,* 113 Neb. 138, it was said: "As to overruling the motion to quash the information, and the plea in abatement, it is sufficient to say that this court in *Nichols v. State,* 109 Neb. 335, considered the statutes and our previous decisions with a view to harmonizing them and outlining the form and allegations necessary to be set forth in an information charging murder in the first degree, so that such a pleading might be stripped of verbiage and brought more closely within the modern rules of procedure."

In *Ringer v. State,* 114 Neb. 404, we said: "The form of the information in the present case was, no doubt, drawn in response to a suggestion of this court in *Nichols v. State,* 109 Neb. 335, in which it was stated that the long and

complicated form of an information for murder, generally in use is not necessary to meet the requirements of the statute, and a short form set out in the opinion was suggested. The question now raised was before the court in *Phegley v. State,* 113 Neb. 138, in which it was held: 'An information charging murder in the first degree in language bringing it within the rule announced in *Nichols v. State,* 109 Neb. 335, is sufficient.' Measured by these standards, the information charged the offense of murder in the first degree."

The defendant contends that intent or purpose to kill is an essential charge in the information and is omitted herein. He cites *Schaffer v. State,* 22 Neb. 557, in support of his contention. A similar question was presented in *Davis v. State,* 116 Neb. 90, also cited by the defendant, and we said: "The case of *Schaffer v. State,* 22 Neb. 557, * * * is not in point. The information which was condemned in that case did not contain an allegation with reference to intent, similar to the one herein set out." In the *Davis* case it was also said: "It may be observed in this case that the information is needlessly involved and teems with unnecessary verbiage and repetition. As heretofore pointed out by this court, an information should charge the offense in simple, concise, direct language. A suitable form is prepared and set out in *Nichols v. State,* 109 Neb. 335. * * * Attention is called specifically to the form of information contained in the opinion in *Nichols v. State, supra,* in the hope that those charged with the prosecution of criminal offenses will hereafter draw indictments and informations conformable to the suggestions therein contained."

In *Pembrook v. State,* 117 Neb. 759, it was said: "The unbroken holdings of this court have been that, in charging these crimes, the pleader must follow the words of the above statutes, or use their equivalent. In harmony with this rule and in furtherance of uniformity and dispatch, in *Nichols v. State,* 109 Neb. 335, under a statute authorizing this court to establish rules, we promulgated a plain, succinct form charging murder in the first degree, as a

guide to bench and bar. This form was not followed in the instant case."

Again, in *Sherman v. State,* 118 Neb. 84, it is said: "The information was drawn in the old-fashioned and involved way much in vogue prior to *Nichols v. State,* 109 Neb. 335, in which a brief form of information for murder in the first degree was set out. We commend its adoption and use." To the same effect, in *Bourne v. State,* 118 Neb. 862, we said: "Prosecutors will find it helpful to use it as a model."

The defendant also cites *Smith v. State,* 21 Neb. 552, which is not applicable to this case. This was a *habeas corpus* case brought to discharge one held upon a fugitive from justice complaint. The complaint set out that the one to be held was a fugitive from the territory of Dakota, where he was charged with the commission of a criminal offense against the law of said territory, which, if committed in this state, would have been a crime. The nature of the crime was not set out. It was held that it was necessary to set out the facts constituting the crime. A properly verified information may be held sufficient, if it states the name and authority of a qualified informer and sets out the facts constituting the elements of murder in the first degree in simple, concise, and direct language. Where an information follows the statute and form heretofore approved in this court, it is sufficient. *Northey v. State,* 114 Neb. 543.

It is also suggested that the evidence is insufficient to sustain the verdict. The evidence is entirely circumstantial. Stephens, a train dispatcher for the Union Pacific railroad, was found lying in a blood soaked bed in his home. The left side of his face and head had been beaten and crushed and the left eye torn out so that it hung by the optic nerve. An examination disclosed four puncture wounds, three of which penetrated the skull, lacerating the brain tissue and producing hemorrhages which caused his death. The wounds had evidently been made by some semi-sharp or blunt instrument. There was no evidence of a struggle, indicating that he was killed while sleeping.

Several loaded guns were in the room or about the house, but they were not used. Neither the money in the deceased's pockets nor anything else was stolen. Stephens was about 50 years of age and his wife was 48. At the time she was visiting her sister in Illinois, where she had gone, contemplating a separation from her husband. Upon the fatal day, he was living alone in his home, which was on an 8½ acre tract, where he raised fruit and vegetables in addition to his employment with the railroad company.

The defendant began to work for Stephens about four months previous to the tragedy. He cultivated, hoed, cut asparagus and helped generally with the garden. During this time he became infatuated with Mrs. Stephens. He told the daughter of Mrs. Stephens about this and stated that he was essential to her happiness. At the time Mrs. Stephens left her husband, defendant told her daughter that he hated Stephens and wished somebody would kill him; that shooting was too good for him. Later, at a time not long prior to the killing, he told the daughter that he would be back on the place (deceased's) in the next six months, repeating that he was essential to her mother's happiness. Shortly after his arrest, he admitted in the presence of witnesses that he knew about the trouble between Mrs. and Mr. Stephens; that he disliked Stephens; that he had trouble with him several times about his work, and when he was discharged, shortly before, he had an argument with Stephens about the amount due him and struck him; that he had told the daughter that he wanted to see Mrs. Stephens happy, and that he was essential to her happiness; that he had a strong infatuation for her and wanted her to be happy; that he did not know whether she could be happy under existing conditions, but that he thought she could after Stephens was away from there.

At the time of the arrest he stated that, on the night before the body of Stephens was found, he started out for a walk around 10 o'clock to get some cigarettes at a hamburger "joint" on Twentieth street, and then walked out on Twenty-fourth; that he did not know how far he went,

but noticed it was getting late and came back to his room about 2 o'clock in the morning; that no one saw him come in; that he got up at 5 o'clock, and that nobody saw him leave the house; that he got his breakfast around 7 o'clock and went to work.

The defendant corresponded with Mrs. Stephens while she was separated from her husband, and the purpose, as explained by Mrs. Stephens, was that she might keep in touch with him as he was her only witness in case of a divorce action. When the deceased was found in his bedroom, the shades of the windows were down except that of the north window, which was open and the screen unhooked. Footprints were found beside a bush a short distance from this window. The measurements of defendant's shoes corresponded exactly with the footprints and when one of them was placed in the tracks it fitted exactly. The defendant did not testify and no evidence was offered in his behalf.

Is the evidence as above outlined sufficient to sustain the verdict? Circumstantial evidence is sufficient to support a verdict if the jury believe beyond a reasonable doubt from such evidence that the accused is guilty. *Bradshaw v. State,* 17 Neb. 147; *Kaiser v. State,* 35 Neb. 704; *Dreessen v. State,* 38 Neb. 375. "The test by which to determine the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect the accused with the crime charged are of such conclusive nature as to exclude to a moral certainty every rational hypothesis except that of his guilt." *Morgan v. State,* 51 Neb. 672. See *Kastner v. State,* 58 Neb. 767; *Smith v. State,* 61 Neb. 296; *Lamb v. State,* 69 Neb. 212; *Taylor v. State,* 86 Neb. 795; *Lowe v. State,* 110 Neb. 325. The great weight of authority supports this rule. *State v. Guffy,* 50 S. Dak. 548; *Scott v. State,* 190 Wis. 238; *State v. Hester,* 205 Ia. 1047; *State v. Hentschel,* 173 Minn. 368; *State v. Bowman,* 294 Mo. 245; *State v. Riggs,* 61 Mont. 25; *Asher v. State,* 90 Fla. 75; *Gardner v. State,* 27 Wyo. 316.

Considered in the light of the rule, the evidence in this case, if believed by the jury, as it was, is sufficient to sustain a verdict of guilty.

AFFIRMED.