STATE OF NEBRASKA, APPELLEE, v. LESLIE D. HARE, APPELLANT.

STATE OF NEBRASKA, APPELLEE, v. MELVIN P. HARE, APPELLANT.

208 N. W. 2d 264

Filed June 8, 1973. Nos. 38761, 38762.

Fisher & Fisher, for appellants.

Clarence A. H. Meyer, Attorney General, and Betsy G. Berger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

In criminal prosecutions for false imprisonment and

manslaughter a jury found Leslie D. Hare and Melvin P. Hare guilty of both offenses. The Hares appeal. Some assignments of error relate to variance and sufficiency of the evidence to sustain the verdicts of guilty on the charges of manslaughter.

On Saturday, February 12, 1972, Leslie, Melvin, Bernard Lutter, Robert Bayliss, and a girl were riding for pleasure in an automobile that Bayliss was operating in Gordon. Bayliss stopped at 9 p.m. upon the request of Leslie. The latter stepped out, shoved an Indian man, who was afoot, and reentered the automobile saying, "Let's go." He also said "something about really getting him." Leslie and Bayliss spoke of throwing an Indian into the American Legion Club for a prank.

The Bayliss party subsequently saw the same Indian, Raymond Yellow Thunder, enter Borman's used car lot. Bayliss stopped, and the four men began to search for Yellow Thunder. Leslie found him in an old pickup truck and opened the door, causing Yellow Thunder to fall to the ground. Leslie, who wore low-heeled, heavy boots, grasped the stock rail and appeared to be "hopping" up and down. He said he was "really stomping him." Bayliss and Melvin rushed to the scene. The former struck Yellow Thunder several times in the face, saying, "It's lots of fun." There was no direct testimony to Leslie's striking the Indian on the head, to Bayliss' blows landing above the nose or cheeks, or to Melvin's striking the Indian anywhere.

Melvin and Leslie proceeded to remove Yellow Thunder's trousers. Leslie "just kind of asked him if he wanted to go for a ride," and Melvin suggested taking him to the American Legion Club. They placed him in the automobile trunk which, according to photographic evidence and testimony of many witnesses, had a latch to open the trunk from the inside. A Nebraska patrolman, who had examined the trunk thoroughly on February 21, however, testified that the trunk then had no inside latch.

With Yellow Thunder in the trunk the automobile was driven around in Gordon 45 minutes. The trunk was opened between 11 p.m. and midnight. Yellow Thunder climbed out and Melvin walked to the door of the Legion Club. Lutter opened the door and Melvin shoved Yellow Thunder inside. Lutter shut the door, and the two men ran.

Inside the club the Indian, Raymond Yellow Thunder, shielded his face with his right hand, pulling his shirt tail with his left hand and hanging his head in embarrassment. Injury to his forehead was not seen there, but a bruise on the right hip was observed. According to Yellow Thunder, he had been "roughed up" and desired to leave. Age 51, he walked out of the club steadily and subsequently proceeded north toward the used car lot.

Again finding Yellow Thunder at the used car lot, Leslie and others once more placed him in the trunk of the Bayliss automobile. They intended to drive him one block to a laundromat where they would release him with his clothes. Prior to releasing him, however, they actually drove several miles to Dean Hare's residence where Melvin left them. The party without Melvin then returned to the laundromat, and someone released Yellow Thunder, Lutter throwing the trousers inside the establishment.

John Paul, a Gordon police officer, saw Yellow Thunder at the police station shortly after midnight the morning of February 13. Yellow Thunder at his own request spent the remainder of the night there. Paul observed "bruises and scratches above the right eye and below the eye, and along the cheek on his right side. . . . (and) right directly above the right eyebrow there was a small cut or wound." The wound glistened, appearing fresh, but blood was not running out of it. Paul smelled the odor of liquor on the breath of Yellow Thunder, who did not appear, however, to be intoxicated.

According to the witness Ghost Dog, on February 13

he talked to Yellow Thunder inside a green pickup truck in the used car lot. "Several days" afterwards, on Friday, the 18th, Ghost Dog again saw Yellow Thunder who appeared to be asleep in the same truck in the used car lot.

In response to a report at 4:20 p.m., February 20, Paul and others removed the body of Yellow Thunder from a panel wagon in the used car lot. Yellow Thunder bore the same bruises, scratches, and wounds that Paul had seen February 13, although the wounds appeared older. He apparently had not been struck subsequent to the time he had been struck by Leslie and Bayliss. A pathologist, Dr. W. O. Brown, performed the autopsy on the body of Yellow Thunder at Rushville on February 21. External examination revealed superficial lacerations, tears in the skin on the head and face, above the right eye, and on the right hip and right leg particularly. A wound above the right eye and forehead, the largest of several wounds, measured one and one-half centimeters in length. "(T)hey looked like they were . . . anywhere from several hours to perhaps several days old. So they were covered by a crust and scabs."

The largest wound above the right eye became impressive on internal examination, for it was larger and deeper than the outer aspects had led Dr. Brown to believe. The entire skin thickness, seven to ten millimeters, was cut, but the skull was not fractured. The wound caused a subdural hematoma and death. Such a wound causes death mechanically by bleeding that builds up pressure and ultimately interferes with vital processes of the brain. The pressure increases slowly because the vessels are usually small and the bleeding, slow. "(D)eath is usually a matter of at least a number of hours; even days; and, even weeks."

According to Dr. Brown, an accurate opinion of time of death is difficult in cases of bodies dead a day or longer. ". . . (Y)ou have to allow for rather large margins there." His report fixes the date of death of Yellow

Thunder on February 17 approximately. He testified that he would underline the word "approximately." Respecting the subdural hematoma, Dr. Brown testified: "Q . . . It had been . . . just the day before or two days before? A It was recent. I wouldn't rule out two or three days, no . . . . Q It could have been two or three days? A Yes . . . That's positive. Yes. Q It could have been ten days? A Well, I doubt if it were ten days because by ten days changes occur in these hematomas . . . —such as, the blood begins to break down and things like that. I don't think it was ten days old. Q And that hadn't occurred? A No, this hadn't occurred."

The fatal wound appeared to have been caused by a fairly broad-surfaced instrument and not by a sharp edge. The findings of Dr. Brown were compatible with any one of a great variety of blows or injuries.

The fatal variance argued by the Hares is said to have been present for the reason that the informations alleged that the Hares committed the offense of manslaughter on February 12, but evidence established that Yellow Thunder died February 18 or 19. In a prosecution for manslaughter in the commission of an assault and battery, the time of the offense is fixed at the time the fatal blow is struck. Debney v. State, 45 Neb. 856, 64 N. W. 446 (1895). The date of death of Yellow Thunder in the context of the foregoing part of the argument is therefore immaterial.

To sustain a conviction for manslaughter, the evidence must be sufficient to justify the finding of a causal connection between the unlawful act and the death of the victim. See, Hamblin v. State, 81 Neb. 148, 115 N. W. 850 (1908); McNamee v. State, 34 Neb. 288, 51 N. W. 821 (1892); Denman v. State, 15 Neb. 138, 17 N. W. 347 (1883). The testimony of Dr. Brown was indefinite and perhaps contradictory in some respects, but it was definite enough for a proper finding that the largest wound above the right eye caused the death of Yellow Thunder.

The testimony of Paul to similarity in appearance of the wounds on February 13 and 20 was important. That testimony in conjunction with other evidence was sufficient for the jury properly to find both Leslie and Melvin guilty of manslaughter.

The judgments are affirmed.

AFFIRMED.