STATE OF NEBRASKA, APPELLEE, V. ROBERT RICHARD BAYLISS, APPELLANT.

210 N. W. 2d 851

Filed October 5, 1973. No. 38961.

Lawrence E. Mitchell, for appellant.

Clarence A. H. Meyer, Attorney General, and Betsy G. Berger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

The defendant, Robert Richard Bayliss, was charged with the false imprisonment and manslaughter of Raymond Yellow Thunder. He was found guilty by a jury on both counts, sentenced to a term of 4 years to the Division of Corrections of the State of Nebraska for the manslaughter conviction, and fined for the false imprisonment. Errors assigned and discussed on appeal, see Rule 8a 2 (3), relate solely to the manslaughter conviction and are: (1) That the evidence was insufficient to establish that the acts of the defendant and of those with whom he acted were the cause of Yellow Thunder's death; and (2) that the sentence is excessive. We affirm.

The events involved in this case are the same as those in State v. Leslie D. Hare and State v. Melvin P. Hare, *ante* p. 339, 208 N. W. 2d 264, where this court affirmed the convictions in those cases. The evidence in the trial of the Hare brothers and that in this is substantially the same with the one exception. That exception is that Ghost Dog, who was a witness in the Hare trial, did not testify in the present case. Because the evidence in the two cases is substantially the same, we will not set forth in detail all the background or evidence except as it bears upon the determination of the errors assigned in this case.

The evidence, which is not contradicted, shows that the defendant and the Hare brothers acting in concert committed an assault and battery upon Yellow Thunder on the night of February 12, 1972. Yellow Thunder was found dead on February 20, 1972, in the cab of a motor

vehicle on a used car lot. An autopsy indicated that the cause of death was a subdural hemorrhage. The battery resulted in wounds and bruises, among others, upon the right side of the head of Yellow Thunder. Following the assault and his release from imprisonment in the trunk of the Bayliss automobile, Yellow Thunder sought and obtained shelter for the remainder of the night (the early morning of February 13th) in the Gordon, Nebraska, city jail. Officer Paul of the Gordon police department testified that when the victim appeared at the jail he had a fresh cut near the right eye and other cuts, scratches, and bruises or dirt along the side of his face and on his forehead. Paul inquired of Yellow Thunder if he was the one who had earlier been thrown into the Legion Club. Yellow, Thunder responded that he was and that four white boys had done it but he did not know who they were. Paul next saw Yellow Thunder's body when it was found on February 20th. At that time he observed the same marks upon the face of Yellow Thunder that he had observed on February 13th. Photographs of the body taken at the time of its discovery were introduced into evidence.

The autopsy was performed on February 21st by Frank W. O. Brown, M.D., a specialist in pathology. He testified that his opinion was that death had occurred several days earlier. He described the cuts and bruises on the face and body of the deceased and indicated: "One in particular, of which went through the entire thickness of the skin and appeared to be more significant and more important than the others."

The examination of the brain of the victim disclosed a subdural hematoma, or hemorrhage, beneath the outer of the three membranes of the brain. The doctor testified that the mechanical pressure of the hemorrhage ultimately caused unconsciousness and later death. He testified that the bleeding was the result of injury, and that a contributing factor to the death was bronchial

pneumonia. He stated that the subdural hematoma developed from slow bleeding over a period of days. It did not cause immediate disability. It eventually produced a coma and during that period the bronchial pneumonia developed and this is a usual concomitant of the coma. The hemorrhage was in the right side of the head and probably was caused by the trauma which inflicted the more significant of the wounds which the doctor observed. The doctor was asked to give his opinion as to the apparent age of the wounds. He responded: "Well, they appeared to all be about of the same age. There was little evidence of inflammatory reaction about them, so that I would suggest that they occurred within - well, a reasonable time before his death; certainly a matter of a couple of days or something of that sort."

The defendant's argument and contention that the evidence does not permit a finding that the acts in which the defendant participated caused Yellow Thunder's death is founded primarily upon the doctor's testimony concerning the apparent age of the wounds and the discrepancy between that opinion and the time of the actual assault. The identity of the wounds caused by the assault with those observed by the doctor is sufficiently established by the testimony of Officer Paul. The jury was not required to accept the opinion evidence of the doctor as being absolutely accurate.

The assault upon Yellow Thunder took place when one of the Hare brothers forcibly removed the victim from the cab of a motor vehicle in which he was apparently sleeping. The evidence shows that this was on the same used car lot at which his body later was found. The evidence permits the conclusion that some time after Yellow Thunder left the jail on February 13th he returned to the used car lot, again sought shelter in a motor vehicle, became unconscious, and later died of the injuries inflicted in the assault and battery upon him. The evidence is clearly sufficient to justify a

finding by a jury of a causal connection between the unlawful act of the defendant and the death of the victim. Morris v. State, 109 Neb. 412, 191 N. W. 717; State v. Hare, *supra*. The first assignment of error is not well taken.

We now examine the participation of the defendant in the crime and his previous history and activities until the time of sentencing to determine whether the sentence of 4 years' imprisonment is excessive.

The evidence shows without contradiction that Bayliss was the owner and operator of the automobile which was used by the participants in the various assaults upon Yellow Thunder. Bayliss readily followed the directions of Leslie Hare to stop the car enabling Hare to commit a minor assault and battery upon the victim upon the street previous in time to the one where the injuries which caused the death were inflicted. The defendant then drove the automobile to the used car lot where a short time later the main battery was committed. He observed Leslie Hare "stomping" Yellow Thunder while the latter lay on the ground. Then while the victim still lay upon the ground, Bayliss raised the victim's head with one hand and struck him with the other two or three times saying, " 'Come on, Butch. This is a lot of fun.' " Later he opened the trunk of his car to permit Yellow Thunder's imprisonment, locked it, and unlocked it later to permit Yellow Thunder to be removed for the purpose of forcing the latter, while he was partially unclothed, into the Legion Club where a dance was in progress. He repeated the process of locking and unlocking the trunk when Yellow Thunder was imprisoned a second time later on the same night and when he was returned to the used car lot after the participants had finished with the victim.

The defendant has no prior felony conviction, but two misdemeanor convictions of offenses not involving violence. He is 26 years old and a competent mechanic with a good work history. He has family responsibilities

which he seems to fulfill adequately. However, there seem to be no factors substantially excusing the depravity of the defendant's conduct on February 12 or 13, 1972. The sentence authorized by statute for manslaughter is 1 to 10 years. § 28-403, R. R. S. 1943. The 4-year term imposed is well within those limits. We have frequently said that where the punishment of an offense created by statute is left to the discretion of a court, to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed on appeal unless there appears to be an abuse of discretion. Pribyl v. State, 165 Neb. 691, 87 N. W. 2d 201. We are unable to say that the trial court abused its discretion.

AFFIRMED.