WILLIAM L. PHEGLEY V. STATE OF NEBRASKA.

FILED FEBRUARY 17, 1925.    NO. 24283.

1. **Homicide:** INFORMATION. An information charging murder in the first degree in language bringing it within the rule announced in *Nichols v. State*, 109 Neb. 335, is sufficient.

2. ———: LAWS CONTINUED IN FORCE. Defendant's contention that no crime of murder existed in this state at the time the crime charged was committed is not well taken in view of section 1, art. XVII, of the present Constitution, which provides: "All laws then in force, not inconsistent with the Constitution as amended by such proposals as may be adopted at such election, shall continue in force until amended or repealed."

3. ———: INTERVENING CAUSE OF DEATH. The law applicable to the evidence tending to prove an intervening cause of death, announced in *Hamblin v. State*, 81 Neb. 148, approved and followed.

4. ———: INSTRUCTIONS. The jury were·instructed that, if they found defendant did the act charged, they were to determine "whether or not" he did such act with malice and intent, respectively. *Held*, use of these words was inapt, but, taking the charge as a whole, reversible error was not committed.

5. **Criminal Law:** NEW TRIAL: NEWLY DISCOVERED, EVIDENCE. A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court, and ordinarily, unless an abuse of discretion is shown, its determination will not be disturbed.

6. **Evidence** examined, and *held* sufficient to support the verdict.

ERROR to the district court for Adams county: WILLIAM A. DILWORTH, JUDGE. *Affirmed*.

*J. E. Willits,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *George W. Ayres, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD and THOMPSON, JJ.

THOMPSON, J.

Defendant, plaintiff in error, was charged in the district court for Adams county with murder in the first degree. Trial was had, verdict of murder in the second degree found, and sentence of 12 years in the penitentiary imposed. To reverse this judgment defendant prosecutes error.

Defendant interposed a motion to quash the information, for the reason, in substance, that it does not set forth the location, nature and extent of the wounds on the body of deceased; that the words in the information, "as a result thereof she died," and "defendant thus committed murder in the first degree," are not statements of fact, but mere conclusions. This motion also states: "That the present Constitution of the State of Nebraska went into effect on January 1, 1921, and there is no common-law crime of murder in the state of Nebraska, and no statutory enactment or law has been passed by the legislature of said state defining murder." The motion was overruled, and a plea in abatement was then filed, containing the same grounds, which was also overruled. At the close of the evidence defendant filed a motion requesting the court to instruct the jury to return a verdict of not guilty of murder in the first degree. This was followed by a similar motion regarding murder in the second degree, and one as to manslaughter. Each in its order was overruled. After verdict, motion for a new trial was had and overruled.

As to overruling the motion to quash the information, and the plea in abatement, it is sufficient to say that this court in *Nichols v. State,* 109 Neb. 335, considered the statutes and our previous decisions with a view to har-

monizing them and outlining the form and allegations necessary to be set forth in an information charging murder in the first degree, so that such a pleading might be stripped of verbiage and brought more clearly within the modern rules of procedure. This information is in harmony with the rule there announced.

As to the other contention, it is sufficient to state that section 1, art. XVII, of the present Constitution, provides, among other things: "All laws then (January 1, 1921) in force, not inconsistent with the Constitution as amended by such proposals as may. be adopted at such election, shall continue in force until amended or repealed." Hence, it is held that both the motion and plea are without merit, and the overruling thereof was not error.

Defendant contends that the court erred in giving certain instructions on its own motion, and in refusing to give certain ones requested by him. We first notice instruction No. 18½ given, which is as follows:

"If a new and independent cause of death intervenes and of itself takes the life of one who has been wounded, then it will be considered the cause of death, and the person inflicting the first wound could not be held accountable for murder however subject he might be to a prosecution for felonious assault, and therefore if there is any reasonable doubt as to whether the death of Laura B. Phegley was caused solely by the operation performed upon her, then the defendant would not be accountable for such death, unless such operation was deemed by the physician attending her necessary and proper in treating her for injuries claimed to have been made by the defendant."

Defendant criticises this instruction because "there is no evidence that an operation was deemed necessary by the physician attending her, and the court assumes that the injuries were made by defendant, or that it would be sufficient if they were claimed to have been made by defendant." The following testimony of Dr. Uridil, who attended Mrs. Phegley after the shooting, shows the lack of foundation for this criticism. "Q. Just what was the

trouble with her when she was brought in, and the nature of her wounds, is what I want, Doctor. A. There was another one (Dr. Uridil had previously testified that there was a gunshot wound in the right breast; another in the lower quadrant of the right breast; and another in the forearm) in the upper abdomen; another one in the back, on the right side of the buttocks, and that was all the visible wounds externally. Q. What do you say, Doctor, as to whether or not these wounds were fatal wounds? A. One cannot tell until an exploration is made. Q. Did you make an exploration? A. Yes, sir. Q. What conclusion did you arrive at then? A. The wound over the abdomen was found to be involving the liver. She had a large puncture wound in the liver, and the stomach was explored, and the small intestines were explored, and there were three lacerated wounds in the jejunum, and the peritoneal cavity was full of blood. These were of course all repaired. From this I would say that they were mortal wounds." And on cross-examination he testified: "Q. How long after you were called to see her was it that you operated, Doctor? A. I think we operated just as soon as we could prepare ourselves, after seeing her the first time." The giving of this instruction was not error. *Hamblin v. State*, 81 Neb. 148.

Instruction No. 22 reads as follows: "Under the laws of this state, one who threatens another in a menacing manner commits an unlawful act, and if you are convinced by the evidence beyond a reasonable doubt that the defendant at the time and place stated in the information was threatening said Laura B. Phegley, and while in the commission of such unlawful act and by reason thereof said revolver was discharged, accidentally or otherwise, whereby said Laura B. Phegley was shot and killed, then the defendant would be guilty of manslaughter."

Defendant contends that there is no evidence showing that he threatened Mrs. Phegley at the time and place stated in the information, and this instruction led the jury to believe that there was. This contention does not reflect

the facts proved. Evans, at whose farm Mrs. Phegley was employed when she was shot, testified as follows: "Q. And were the people all there yet? A. No, sir; they had started home; they had just started when Mrs. Phegley and I heard a car start up back of the barn, and the car drove around to the barn—to the west side of the barn—and some one got out when it was about two-thirds of the way up to the walk, and the Mrs. says, 'That is Will.' Q. How far was he from Mrs. Phegley and yourself when she recognized him? A. He was probably 16 or 18 feet—16 probably. Q. What else was said or done at that time and place? A. Well, she said, 'Don't let him in.' The gate stood a little ajar, and I pulled that shut, and he came up within 6 or 8 feet and drawed a gun on me. She stepped in front of me, and said, 'Don't shoot.' She was on the right side of me, and she stepped over and told me to go; and I ran around the mill, and then there was some shots fired. * * * Q. You say that Mr. Phegley said, 'What do you mean?' when you closed the gate. How soon after he said that was it that he drew the gun? A. Just about the same time." The evidence further shows, and the jury so found, that Mrs. Phegley died from the effects of those shots which Evans heard. This testimony, taken in connection with the facts and circumstances leading up to and surrounding the tragedy, warrant the instruction.

Instruction No. 23, on the presumption of defendant's innocence and necessity for proof of guilt beyond a reasonable doubt, and No. 24, defining reasonable doubt, are complained of. While these instructions are not couched in the same language, they come within the rule approved in *Goemann v. State,* 100 Neb. 772. The giving thereof was not error.

Instruction No. 13 charged the jury as follows: "You are instructed that the intent with which an act is done is a mental process and as such generally remains hidden within the mind where it is conceived, and it is rarely, if ever, susceptible of proof by direct evidence, but may be inferred or gathered from outward manifestations, by the words or

acts of the party and the facts and circumstances surrounding or attendant upon the offense with which it is charged to be connected. It is for you to determine from all the facts and circumstances in evidence before you whether or not the defendant at the time he committed the acts complained of, if you find from the evidence that he did commit them, had the intent so to do."

And instruction No. 14 charged the jury that "Malice is an essential element of the crime of murder in the first degree; also of murder in the second degree; and before you can find the defendant guilty of either of these offenses, you must be convinced beyond a reasonable doubt from all the facts and circumstances in evidence whether or not the defendant at the time he committed the acts complained of, if you find from the evidence beyond a reasonable doubt that he did commit them, did so with malice on his part."

Defendant contends that the use of the words "whether or not" in these two instructions was prejudicial to him, in that such use placed a burden on him to prove that he did not have intent and malice, and robbed him of the presumption of innocence. While the words were not apt in the connection used, and while we do not approve of their use, yet, taking the court's charge as a whole, we cannot say that, by their inclusion, prejudicial error was committed. "The true meaning and effect of instructions are not to be determined by the selection of detached parts thereof, but by considering all that is said on each particular subject or branch of the case." *St. Louis v. State*, 8 Neb. 405; *Murphy v. State*, 15 Neb. 383; *Debney v. State*, 45 Neb. 856; *Junod v. State*, 73 Neb. 208; 14 R. C. L. 817, sec. 76. Then we are convinced that, from the use of these words, "No substantial miscarriage of justice has actually occurred." Comp. St. 1922, sec. 10186.

A number of witnesses were sworn and examined, and numerous letters showing a correspondence between defendant and Mrs. Phegley, covering several years prior to the tragedy, some going back to the time before she obtained a divorce, were introduced in support of the motion

for a new trial, as newly discovered evidence, the overruling of which motion defendant assigns as error. We have considered this additional evidence and find it to be merely cumulative to that introduced at the trial, and which might have been furnished at that time if proper diligence had been shown. We find further that the evidence of what took place between these two after the divorce militated against defendant, and which if introduced would have been detrimental to him. To illustrate, the evidence of the county attorney was taken, in which he testified, in substance, that he made a careful investigation of the garments worn by Mrs. Phegley at the time of the shooting, and that powder marks were not to be found thereon. This would have been additional evidence on the part of the state tending to disprove defendant's claim of accidental discharge of the pistol while he and Mrs. Phegley were scuffling for the possession of it, he having it in his hand. Further, a letter was introduced which had been written by Mrs. Phegley, dated January 8, 1923, in which she told of defendant's threats toward her, and of her intention to put him under heavy bonds unless he desisted, which also would serve to strengthen the state's case as to his intent. Then, such ground for a new trial is addressed to the sound discretion of the trial court. Where, as in this case, an abuse of discretion is not found, the conclusion of the trial court will not be disturbed. Overruling of the motion for a new trial on this ground was not error. *Hamblin v. State, supra.*

Defendant contends, also that the evidence is insufficient to sustain the verdict. After a careful examination of the entire record, we are convinced that this contention is not well taken, and that the verdict rendered is amply supported thereby. The record shows that the jury's considerations were clothed with that candor and impartiality which excludes every suspicion of passion, bias, or prejudice, and that the court tempered its judgment with mercy. A further detailed statement of the contents of this voluminous record would serve no useful purpose. The jury

are the triers of fact and, as we have often held, their conclusions will not be disturbed unless clearly wrong.

We have carefully considered every alleged error presented, whether such error has been expressly mentioned in this opinion or not, owing to the importance of the case, and find that reversible error has not been committed. Therefore, the judgment of the district court is

AFFIRMED.

Note—See Homicide, 30 C. J. secs. 275, 531, 560; 29 C. J. secs. 54, 56; Criminal Law, 16 C. J. secs. 2493, 2708; 17 C. J. sec. 3589; Constitutional Law, 12 C. J. sec. 105.