STATE OF NEBRASKA, APPELLEE, V. JOSEPH HAYES HARRIS, APPELLANT.

230 N. W. 2d 203

Filed June 5, 1975. No. 39670.

Frank B. Morrison and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Jerold V. Fennell, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

After trial to the jury the defendant, Joseph Hayes Harris, was found guilty of murder in the first degree by reason of having killed Camille Hugg in the per-

petration or attempted perpetration of a robbery. A judgment of guilty was entered on the verdict and the defendant, pursuant to the provisions of sections 28-401 and 29-2520 to 29-2524, R. S. Supp., 1974, was sentenced to imprisonment for life.

The issues for consideration on this appeal are: (1) Was the evidence sufficient to permit the jury to find that acts done by the defendant during the attempted robbery were, in legal contemplation, the cause of the death of the victim; and (2) the correctness of the instruction by which the issue of causation was submitted to the jury. We affirm.

The evidence permitted findings as follows. On the evening of October 28, 1973, Camille Hugg, age 81, was the victim of an attempted purse snatch by two young men. She resisted, clung to her purse, was knocked to the ground by her assailants, was kicked, and suffered a broken hip either from the fall or the blows. One of her assailants was the defendant, the other being Abe Clark Lytle, whose case is also before this court on appeal. The victim was hospitalized for treatment of her hip fracture, surgery was performed, and a pin inserted. She later died on December 17, 1973, without having been released from the hospital.

The primary theory of the defense was that the victim's death was not caused by the acts of the assailants, but was the result of intervening events and causes, including infection not related to the injury.

A summary of the evidence will suffice for determination of the first issue. Thomas Joseph Gurnett, M.D., one of the treating physicians, testified on behalf of the State. He had been Camille Hugg's physician since May 17, 1965. His last examination of her, preceding her hospitalization on October 16, 1973, occurred in June of 1971. At that time he had given her a general physical examination. She then had diabetes, well controlled by insulin, a mild hypertension, and a skin disorder involving both hands. She was at that time in generally

good physical condition. The doctor had known her a long time through professional medical contact as she was a retired nurse anesthetist. He was of the opinion that if there had been any substantial physical ailment after July 1971 she would have consulted him, but she did not. Immediately following her injury on October 28, 1973, Camille Hugg was taken to Douglas County Hospital where she was first seen by Dr. Tomczak who is in charge of the emergency room at that institution. His examination showed that the victim's heart sounds were normal and her lungs clear. She was mentally alert and oriented, but anxious. She had bruises on an arm and signs of a left hip fracture which was later confirmed by X-ray. Traction was applied to the injured extremity. An electrocardiac examination showed slight pulse irregularity. Her blood pressure was also slightly elevated. She appeared to be her stated age. He ascertained that she had controlled diabetes, but was otherwise in good health. A urine culture demonstrated no infection.

On October 31, 1973, the patient was transferred to another hospital where she was seen for the first time after the accident by Dr. Gurnett. He attended and saw her daily after that until her death. His initial examination at this time indicated that she appeared to be in the same condition of health as in 1971, except for the broken hip, a mild bladder infection, and complaints of a pain which he believed, because of the nature of the pain and the fact that it gradually subsided, indicated a fracture of the sternum. He testified that in a person of the age of Camille Hugg a hip fracture "can be life threatening." In consultation with an orthopedic surgeon it was determined that surgery was necessary and that the fracture should be treated by internal fixation with a pin. This method would eliminate the necessity of a body cast. Such surgery was performed on November 4, 1973. Shortly after the surgery the patient de-

veloped a rapid irregular heartbeat. This was treated and the beat returned to normal.

The doctor testified that dangers associated with hip fracture and surgery in an elderly patient are respiratory difficulties, secondary pneumonia, circulatory problems, lack of fluid balance, and pressure sores. In this patient's case, pneumonia developed, circulatory problems developed, stress ulcer formed, a small bloodclot from the lower extremities lodged in a lung before abating, abdominal and bowel distress developed, infection of the parotid gland developed, probably caused by the debility from illness, and kidney failure developed, as did an overwhelming systemic infection. By November 17, 1973, the hip was healed. On December 17, 1973, the patient died.

On the question of the cause of death Dr. Gurnett testified on direct examination as follows: "Q. Now, Doctor, I'll ask you if you have an opinion based on reasonable medical certainty from your examinations, findings, treatment, noting of the complications that set in, as to the cause of death of Camella Hugg on December 17th. A. Yes, sir, I do. Q. Could you relate that for us in summary fashion? A. I have the opinion that since Mrs. Hugg was up and about and doing well, not contacting me for medical treatment or advice, that following the fracture of her hip which occurred as the result of an injury, that the complications which I have described came in the wake of that injury, and all were directly related to the injury itself. It is my considered opinion that her death was secondary to the injuries and the following complications of that injury." On re-direct examination he testified: "Q. Doctor Gurnett, would the complications that you spoke with reference to both on Direct and more fully on Cross Examination have occurred if Mrs. Hugg had not fractured her hip and been hospitalized? A. I do not believe they would have." The substance of Dr. Gurnett's testimony was that if the victim had not suffered the broken hip the

complications would not have occurred and she would not have died.

An autopsy was performed on the body on December 17, 1973. It generally verified the various complications testified to by Dr. Gurnett, except that of the generalized infection, and in addition showed that Camille Hugg had suffered a small myocardial infarction within 10 days of her death. The pathologist also testified that the tests used to determine whether general infection existed were unreliable and therefore were inconclusive. The pathologist did not search for evidence of a fracture of the sternum. Upon cross-examination, defense counsel sought to elicit from the pathologist an opinion that Miss Hugg died from the hip surgery. The answer was: "No, sir, I don't think I can say that."

The evidence tending to support the defendant's theory that the victim's death was caused by intervening events was most ably brought out by the presentation of pertinent medical records and a skilled cross-examination. The record of the trial indicates thorough and conscientious pretrial preparation by defense counsel. The fact that defense counsel's efforts in this area were knowledgeable is evidenced by the responses from the expert witnesses. All aspects of the evidence which tended to support a conclusion of death caused by independent and intervening causes were clearly highlighted in the cross-examination. A summary of these highlights is not necessary.

It would appear that the evidence raised a factual question for the jury to determine, under proper instructions from the court, whether the victim's death was caused by acts of the accused or by independent intervening acts or causes. This court has, on several occasions since 1883, been called upon to consider the legal sufficiency of the evidence and the rules of law applicable to such issues. Denman v. State, 15 Neb. 138, 17 N. W. 347, was a prosecution for second degree murder. In that case the defendant struck the victim with a

knife, inflicting a wound on the arm, which in and of itself was not mortal. An infection, described as erysipelas, ensued and the victim died 2 days after the wounding. This court said: ". . . if but for the wound death would not have ensued, it is no defense that because of the wound fever or erysipelas set in and was the immediate cause of death." That opinion approved an instruction on causation given by the trial court. That instruction we will discuss when we reach the second issue before us. Hamblin v. State, 81 Neb. 148, 115 N. W. 850, involved a prosecution for first degree murder. The victim was shot in the spine and suffered paralysis below the point where the spinal cord was damaged. In the course of treatment a glass catheter was inserted to permit elimination of urine. The catheter broke and a portion remained in the urinary tract. An operation was necessary to remove it. Infection developed and the victim died. The wounding took place on August 3, 1906, and the death occurred on January 14, 1907. The evidence in that case indicated that the wound probably would have been fatal in any event. However, the court went on to say that even if unskillful treatment contributed to the death it was no defense. This court also said: ". . . if a new and independent cause of death intervenes and of itself takes the life of one mortally wounded, it will be considered the cause of the death, and the person inflicting the first wound could not be held accountable for the murder, however subject he might be to a prosecution for the felonious assault. But, as in a case of this kind, when the wound inflicted was mortal *or dangerous* and directly contributed to the death, the first wrongdoer will not be absolved from accountability for his act." (Emphasis supplied.) In Phegley v. State, 113 Neb. 138, 202 N. W. 419, this court said that if the death of the victim was caused solely by the operation performed to treat the wound, the defendant would not be accountable "unless such operation was deemed by the physician at-

tending her necessary and proper in treating her for injuries" suffered in the assault. In Benton v. State, 124 Neb. 485, 247 N. W. 21, it was held, in a prosecution for manslaughter committed by means of negligent operation of an automobile, that the fact that negligence of a victim may have also contributed to the accident and death was no defense. The statements of the applicable principles of law announced in the foregoing cases appear to state the general rule. See, also, 40 C. J. S., Homicide, § 11, p. 851. "The act of accused must be a proximate cause of death but need not be the direct, immediate cause. It is sufficient if the direct cause resulted naturally from the act of accused, as where the direct cause was a disease or infection resulting from the injury inflicted by accused. . . . It is not a defense to one whose act has contributed to the death that improper treatment on the part of physicians, nurses, or the victim also contributed thereto; but one who has inflicted an injury is not responsible for homicide where death results solely from erroneous treatment by another." 40 C. J. S., Homicide, § 11, pp. 854, 855. See, also, 40 Am. Jur. 2d, Homicide, § 13 et seq., p. 304. We have most recently cited Denman v. State, *supra,* and Hamblin v. State, *supra,* in State v. Hare, 190 Neb. 339, 208 N. W. 2d 264. The evidence in this case under the foregoing rules clearly presented a factual question for determination by the jury.

The second issue is whether the jury was properly instructed on the issue of causation. The defendant objected to the following instruction on the basis that it made applicable a tort standard of causation rather than a more strict standard claimed to be applicable to prosecutions for homicide. The instruction given was as follows: "You are instructed that to constitute a homicide committed while perpetrating or attempting to perpetrate a robbery there must be, in addition to the death of a human being, a robbery or an attempted robbery which proximately caused that death.

"The proximate cause of a death is that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause produces the death, and without which the result would not have occurred. It is the efficient cause, the one that necessarily sets in operation the factors that accomplish the death.

"This does not mean that the law seeks and recognizes only one proximate cause of a death, consisting of only one factor, one act, one element or circumstance, or the conduct of only one person. To the contrary, the acts of two or more persons may work concurrently as the efficient cause of a death, and in such a case, each of the participating acts is regarded in law as a proximate cause.

"An 'efficient intervening cause' is a new and independent act, itself a proximate cause of the death, which breaks the causal connection between the original illegal act and the death."

The defendant relies upon People v. Scott, 29 Mich. App. 549, 185 N. W. 2d 576 (1971); and Commonwealth v. Root, 403 Pa. 571, 170 A. 2d 310, 82 A. L. R. 2d 452 (1961). In those two cases the court said that in a homicide case the tort concept of proximate cause was not applicable and a "more direct" causal connection was required for conviction. In each case the court held that a verdict should have been directed for the defendant because, as a matter of law under the evidence, the "more direct" cause did not exist. Both cases were prosecutions for involuntary manslaughter involving negligent operation of motor vehicles. In the Pennsylvania case the defendant and the victim were racing on a two-lane highway. The victim, in attempting to pass the defendant's vehicle, drove into the left-hand lane and collided with a truck coming from the opposite direction. In the Michigan case the defendant was fleeing to avoid arrest and a police vehicle chasing him collided with a bus at an intersection killing a police officer. In neither of these cases was the court directly

concerned with the form of the instructions to be given to the jury. Both courts were drawing a policy line on proximate cause under a particular set of facts. This is what all courts do both in tort and criminal cases when they say that, as a matter of law, the evidence is insufficient to make a jury question on the issue of proximate cause. Understandably, neither court made an attempt to state a rule defining what "more direct" means. In each case the discussion indicates that the court was concerned with avoiding a statement of a rule for criminal prosecutions which would adopt recent "extensions" of proximate cause concepts in civil torts. Nothing these two courts said offers any guidelines whatever for instructing a jury, nor do they have any application under the evidence of this case. Defendant urges that we reverse, but he makes no suggestion whatever as to what an appropriate instruction upon retrial should be.

In Denman v. State, *supra,* we approved the following instruction by the District Court: " 'If you find from the evidence that the defendant inflicted a wound upon the person of Thomas Coakley, as charged in the indictment, then if such wound so inflicted by the defendant caused or directly contributed to the death of said Coakley, then the prisoner cannot be excused, because other causes may have also contributed to his death. If death ensues from a wound given in malice, but not in its nature mortal, but which from want of helpful applications, or from natural causes, develops a fever or an erysipelatous inflammation, and that fever or erysipelatous inflammation be the immediate cause of the death, yet the person who gave such wound cannot be thereby excused; for that the wound, though it was not the immediate cause of the death, yet if it is the mediate cause and the fever or erysipelatous inflammation is the immediate cause, the wound, being the cause of the fever or the erysipelatous inflammation, is the cause of the immediate cause, and the person who inflicted

such wound is responsible for the result of such wound according to the circumstances of the case.' " In Phegley v. State, *supra,* an intervening cause instruction as follows was approved: " 'If a new and independent cause of death intervenes and of itself takes the life of one who has been wounded, then it will be considered the cause of death, and the person inflicting the first wound could not be held accountable for murder however subject he might be to a prosecution for felonious assault, and therefore if there is any reasonable doubt as to whether the death of Laura B. Phegley was caused solely by the operation performed upon her, then the defendant would not be accountable for such death, unless such operation was deemed by the physician attending her necessary and proper in treating her for injuries claimed to have been made by the defendant.' "

The jury in the case before us was instructed that the State was required to prove beyond a reasonable doubt the elements of the crime, including, of course, that the acts of the defendant caused the victim's death. The defendant relies also upon a dictum found in Parrish v. State, 14 Neb. 60, 15 N. W. 357, which states that if except for the operation the victim would have recovered the jury must acquit. Assuming that is a correct statement of the law, it has no application here. There is in the record no evidence whatever, even by way of the slightest inference, that Camille Hugg would have recovered had the operation not been performed.

The instruction given by the trial court was appropriate to the evidence in this case, was in substance the same as that approved in the earlier cases, and enabled the defendant to effectively argue to the jury and have it consider the defendant's theory of independent intervening cause, namely, that the surgery, treatment, and infection were the cause of death.

AFFIRMED.