STATE OF NEBRASKA, APPELLEE, V.
MICHAEL R. BUCHANAN, APPELLANT.

312 N.W.2d 684

Filed November 25, 1981. No. 43941.

Allen Fankhauser of Kotouc, Kotouc, Fankhauser & Maschman for appellant.

Paul L. Douglas, Attorney General, and Dale D. Brodkey for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The appellant, Michael R. Buchanan, was convicted of one count of delivery of a controlled substance and one count of manslaughter. He was thereafter sentenced to a term of 1 year's imprisonment in the Nebraska Penal and Correctional Complex for the unlawful delivery of a controlled substance, and not less than 2 nor more than 10 years' imprisonment in the Nebraska Penal and Correctional Complex for the commission of manslaughter. He has appealed from that judgment and sentence. His assignments of error, though several in number, are essentially but two. The first claim is that the evidence offered to establish the commission of manslaughter was insufficient, thereby entitling Buchanan to a directed verdict of acquittal.

Buchanan further maintains that certain of the instructions given by the trial court were erroneous. The record reflects that Buchanan made no objection to the instructions and did not tender any instruction with regard to the matters claimed to be in error. We have examined the record and concluded that there is no error and that the judgment and sentence should be affirmed.

The facts in the case are fairly without dispute and paint a picture of a tragically wasteful day of drinking and drugs which ultimately led to the unnecessary and untimely death of one Jack Belcher. The evidence discloses that Belcher worked at the Cooper Nuclear Plant near Brownville, Nebraska, and lived at a motel in Auburn, Nebraska, with Leonard Wagner, the chief witness for the State. During the day and evening immediately prior to Belcher's death the evidence discloses that Belcher had been drinking, smoking marijuana, and using "green and red pills." According to Wagner, Buchanan and someone else referred to only as "a friend" gave a drug described as ethchlorvynol to Belcher in the form of Placidyl, a prescription capsule sleeping pill.

Wagner testified that about 8 p.m. Belcher, David Isbell, and appellant went into the bathroom together and came out together, and Belcher was "high as a kite and laughing and staggering . . . ." About a half hour later Belcher, Isbell, and Buchanan again entered the bathroom. This time Wagner followed them into the bathroom. Wagner observed Belcher sitting on the toilet with a needle in his arm, Isbell manipulating the needle, and Buchanan holding Belcher's arm. Wagner testified that the syringe was red from the mixing of the drug with blood, and fluid was being injected into Belcher's arm. Immediately after the injection, Belcher turned blue, started shaking, and made snorting noises. He then lost consciousness for a short period of time and slid off the toilet and became incoherent.

At that point Wagner put Belcher to bed and ordered everyone else to leave. At about 9 p.m. Belcher told Wagner he felt very sick and shortly thereafter began vomiting. Later he again became ill, this time not only vomiting, but his "bowels were running." At that time Wagner contacted other men with whom he worked, who called an ambulance.

After Belcher was taken away in the ambulance Wagner went to Buchanan's room to ask him for the pills Belcher had been given by Buchanan so that an antidote could be found. Buchanan gave him a pill which was later given to the police.

When the police later came into Belcher's motel room with Wagner, Wagner removed a wastebasket from the bathroom. The wastebasket contained a syringe which was later identified and introduced in evidence. Wagner's testimony was corroborated by an investigator with the Auburn Police Department who searched the room. The syringe contained a liquid identified as ethchlorvynol. Furthermore, evidence was introduced which identified the "green pill" which Wagner had obtained from Buchanan as a Placidyl capsule which contained ethchlorvynol.

The emergency room doctor on duty at the Nemaha County Hospital attempted unsuccessfully to save Belcher's life. Soon after Belcher arrived at the hospital, his heart stopped and he quit breathing. The physician attempted resuscitation for 20 to 25 minutes and administered antidote drugs. Certain physical tests were also made before Belcher's death in order to determine the cause of his condition.

The physician determined that Belcher died of pulmonary edema, which is excess fluid in the lungs, with secondary cardiac failure from the inability to oxygenate the heart. He was of the opinion that the cause of the pulmonary edema was "an overdose of drugs."

An autopsy was later performed on Belcher. The pathologist who performed the autopsy testified that

the most significant findings he made from his external examination were the presence of recent needle puncture wounds in the skin on the inside of each elbow. There were three on the right arm and two on the left. In the pathologist's view the cause of death was "the result of adverse reaction to multiple drugs administered intravenously, giving rise to the reaction resulting in acute cardiac failure with the pulmonary edema and congestion." Specifically, the pathologist testified that the cause of Belcher's death was "an adverse reaction to these drugs given intravenously which in all three of the drugs are normally taken by mouth, which preparations are not made to be given intravenously and, that, coupled with shooting them intravenously, provoked in this particular individual the adverse reaction leading to his acute heart failure with the pulmonary edema and death."

We turn first to the objection raised by Buchanan that there was error in the instructions. As earlier noted, the record discloses that no objections were made to the instructions nor were any other instructions tendered to the court by Buchanan. We have frequently held that failure to object timely to a jury instruction prohibits a party on appeal from contending the instructions were erroneous. See *State v. Tiff*, 199 Neb. 519, 260 N.W.2d 296 (1977). And a party who desires more precise jury instructions must request them at the time the instructions are being considered and not on appeal. *State v. Lynch*, 196 Neb. 372, 243 N.W.2d 62 (1976). Furthermore, a reading of the instructions tendered by the court, taken as a whole, as they must be taken, discloses that the instructions followed the language of the statute. If the court has instructed the jury generally on the law of the case and has not withdrawn any essential issue from consideration of the jury, error cannot be predicated on some particular phase of the case unless proper instructions have been requested by the party complaining. *State v. Ford*, 186 Neb. 109, 180 N.W.2d

922 (1970). The trial court instructed the jury in the language of the statute. That is all that is required in a criminal case, absent a more specific request. See, *State v. Gallegos*, 193 Neb. 651, 228 N.W.2d 615 (1975); *State v. Sukovaty*, 178 Neb. 779, 135 N.W.2d 467 (1965). Buchanan's contention that the instructions were erroneous is without merit and must be overruled.

We turn then to Buchanan's remaining assignment of error, to wit, that the evidence was insufficient to submit the case to the jury. Buchanan argues that the State's evidence is principally circumstantial and that the State has failed to disprove every hypothesis of nonguilt, thereby requiring the trial court to direct a verdict of acquittal. While some decisions of this court may be found which create some confusion as to the State's burden in such a case, the better reasoned decisions of both this court and other courts, including the U.S. Supreme Court, which have written on this matter are to the contrary. See, *Holland v. United States*, 348 U.S. 121, 75 S. Ct. 127, 99 L. Ed. 150 (1954); *State v. Payne*, 205 Neb. 522, 289 N.W.2d 173 (1980).

In *United States v. Nelson*, 419 F.2d 1237 (9th Cir. 1969), the Court of Appeals held that a conviction may be sustained if the defendant's guilt is established beyond a reasonable doubt from all the evidence in the case, including such reasonable inferences as seem justified in the light of the trier of facts' own experience.

In rejecting the claim that the prosecution must disprove every hypothesis but that of guilt, the Court of Appeals said: "The 'reasonable hypothesis' test was formulated for the evaluation of circumstantial evidence; it is often referred to as the 'circumstantial evidence test.' *See, e.g.*, Comment, Sufficiency of Circumstantial Evidence in a Criminal Case, 55 Colum. L. Rev. 549 (1955). As we have noted, the Supreme Court rejected the test in *Holland* on the premise that there is no essential difference in the mental processes required of the jury in weighing direct and circum-

stantial evidence. As to both, 'the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.' Holland, 348 U.S. at 140, 75 S. Ct. at 138.

". . . The required degree of probability is reached if the jury is free of 'the kind of doubt that would make a person hesitate to act' in the more serious and important affairs of his own life. Holland v. United States, *supra*, 348 U.S. at 140, 75 S. Ct. at 138. . . . .

"The 'reasonable hypothesis' test does not reflect what juries and reviewing courts in reality do. Juries constantly convict, and the convictions are duly affirmed, on evidence upon which none would hesitate to act but which cannot be said to exclude as a matter of inexorable logic, every reasonable hypothetical consistent with innocence.

"Moreover, the impression left by appellate court opinions is that the 'reasonable hypothesis' standard may lead to serious departures from the proper appellate role in evaluating the sufficiency of evidence. Courts following the rule exhibit a noticeable tendency to divide the evidence into separate lines of proof, and analyze and test each line of proof independently of others rather than considering the evidence as an interrelated whole. The sufficiency of the evidence is often tested against theoretical and speculative possibilities not fairly raised by the record, and inferences are sometimes considered which, though entirely possible or even probable, are drawn from evidence which the jury may have disbelieved." *Nelson, supra* at 1244-45.

Circumstantial evidence is entitled to be treated by the trier of facts in the same manner as direct evidence. In *People v. Johnson*, 83 Mich. App. 1, 17, 268 N.W.2d 259, 268 (1978), the Michigan Supreme Court said: "'First, we believe that the implied distrust of circumstantial evidence is not warranted. Whether the evi-

dence is "direct" or "circumstantial", we would not allow a conviction if we felt that the evidence was not sufficient to prove guilt beyond a reasonable doubt. To the extent that the rule requires the prosecution to disprove all negative theories, the test could never be met, even by direct evidence. Even with eye-witness testimony there are always innocent theories which are not specifically disproven. There will always be a chance that an eye-witness is honestly mistaken about identification.'"

The Michigan court stated that it should be sufficient if the prosecution proves its own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defense may produce, and held that the standard, therefore, would be whether the evidence presented by the prosecution justifies a reasonable person in concluding that all elements of the crime were established beyond a reasonable doubt.

Also in *United States v. Nelson*, 419 F.2d 1237 (9th Cir. 1969), the U.S. Court of Appeals was called upon to review the applicability of circumstantial evidence in a criminal case. It said: "For at least a third of a century this court has rejected the notion that it is improper to infer a fact at issue from other facts which have been established by circumstantial evidence. E. K. Wood Lumber Co. v. Andersen, 81 F.2d 161, 166 (9th Cir. 1936); Ross v. United States, 103 F.2d 600, 606 (9th Cir. 1939); Fegles Construction Co. v. McLaughlin Construction Co., 205 F.2d 637, 639-640 (9th Cir. 1953); Toliver v. United States, 224 F.2d 742, 745 (9th Cir. 1955); Medrano v. United States, 315 F.2d 361, 362 (9th Cir. 1963); Devore v. United States, 368 F.2d 396, 399 (9th Cir. 1966). As Professor Wigmore has said, '[t]here is no such orthodox rule; nor can be. If there were, hardly a single trial could be adequately presented.' 1 Wigmore, Evidence, § 41, at 435 (3rd ed. 1940).

"The error in this discredited doctrine is clearly reflected in the defendant's formulation: it assumes that

a fact established by circumstantial evidence is not a 'proven fact.' But as we have repeatedly said, circumstantial evidence is not inherently less probative than direct evidence. Under some conditions it may even be more reliable, as this case illustrates.

. . . .

"Of course either direct or circumstantial evidence may fail to prove the fact in issue—direct evidence because the credibility of the witness is destroyed; circumstantial evidence for that reason, or because the inference from the proven circumstances to the fact in issue is too speculative, or remote. Whether such a failure has occurred is an appropriate inquiry in any case—be the evidence direct, circumstantial, or both. But since under some conditions circumstantial evidence may be equally or more reliable than direct evidence, it would be wholly irrational to impose an absolute bar upon the use of circumstantial evidence to prove any fact, including a fact from which another fact is to be inferred." *Nelson, supra* at 1239-40.

We believe that we must once and for all abandon any notion that before an accused may be convicted on the basis of circumstantial evidence alone, the State must disprove every hypothesis but that of guilt. One accused of a crime may be convicted on the basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt. The State is not required to disprove every hypothesis but that of guilt. See, *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976).

To the extent that what we have previously said regarding a requirement that the State must disprove every hypothesis but that of guilt is inconsistent with our holding in this case, it is overruled.

There is no question that Buchanan committed an unlawful act in delivering a controlled substance. He admitted that to Wagner when Wagner asked him to provide him with the pills which he had given to

Belcher. The question then is whether the delivery of that pill was either the proximate cause or a proximate cause of Belcher's death. If the evidence was sufficient to support a jury's finding beyond a reasonable doubt that the delivery by Buchanan to Belcher of an unlawful controlled substance was one of the proximate causes of his death, then the evidence was sufficient to submit the case to a jury. We have frequently said: "In determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it." *State v. Carter*, 205 Neb. 407, 409, 288 N.W.2d 35, 36 (1980). See, also, *State v. Muniz*, 203 Neb. 206, 277 N.W.2d 712 (1979). Moreover, we have said: "It is only where there is a total failure of competent proof in a criminal case to support a material allegation in the information, or where the testimony adduced is of so weak or doubtful a character that a conviction based thereon could not be sustained, that the trial court will be justified in directing a verdict of not guilty." *State v. Webb*, 197 Neb. 662, 664, 250 N.W.2d 625, 627 (1977).

It was therefore for the triers of fact, in view of the medical testimony in this case, to determine from the evidence whether the delivery by Buchanan to Belcher of an illegal controlled drug was one of the proximate causes of his death. In *State v. Lytle*, 194 Neb. 353, 358, 231 N.W.2d 681, 685-86 (1975), we said: " 'The proximate cause of a death is that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the death, and without which the result would not have occurred. It is the efficient cause, the one that necessarily sets in operation the factors that accomplish the death. * * *

" 'An efficient intervening cause is a new and in-

dependent cause, itself a proximate cause of the death, which breaks the causal connection between the original illegal act and the death.'"

And in *State v. Harris*, 194 Neb. 74, 81, 230 N.W.2d 203, 207 (1975), we said: "'[T]he acts of two or more persons may work concurrently as the efficient cause of a death, and in such a case, each of the participating acts is regarded in law as a proximate cause.'"

The jury could reasonably find beyond a reasonable doubt that the delivery of ethchlorvynol to Belcher by Buchanan and injected into Belcher was the proximate cause of his death. Almost immediately after the injection Belcher reacted negatively. He became unconscious. He then went from unconsciousness to violent illness and in several hours he died. There was no evidence of any intervening cause between the time the drug was injected into Belcher and his death. The fact that Belcher may have taken other drugs earlier does not aid Buchanan. The evidence supports the claim that Belcher had ethchlorvynol in his system at the time of his death, that the syringe found in Belcher's room contained ethchlorvynol, and that, according to the pathologist, Belcher died from an adverse reaction to the drugs, including ethchlorvynol. Furthermore, the emergency room physician's testimony is not inconsistent with that of the pathologist. He maintained that the cause of death was "an overdose of drugs," including the ethchlorvynol. Both the emergency room physician and the pathologist stated that the cause of death was drug-related. The jury could, as reasonable persons, find beyond a reasonable doubt that the proximate cause or one of the proximate causes of Belcher's death was the unlawful delivery by Buchanan to Belcher of ethchlorvynol injected into his arm. The evidence was sufficient to submit the case to the jury and Buchanan's assignment of error in that regard must likewise be rejected. The judgment of conviction

and the sentences imposed are in all respects correct and must be affirmed.

AFFIRMED.

BOSLAUGH, J., dissenting in part.

While I concur in the judgment of the court, I do not concur in that part of the opinion which attempts to restate the circumstantial evidence rule.

There is no burden upon the State to disprove any hypothesis of nonguilt. The burden upon the State is to prove the defendant guilty of the crime charged beyond a reasonable doubt. When the State relies upon circumstantial evidence to prove the defendant's guilt, a determination must be made whether the inferences which can be drawn by the trier of fact from that evidence, together with all the other evidence, are sufficient to permit a finding of guilt beyond a reasonable doubt.

If the inferences to be drawn from particular facts are equally consistent with guilt or innocence, then it should be clear that those facts alone are not sufficient to support a finding of guilt beyond a reasonable doubt. It is only when the inference of guilt is stronger than any reasonable inference of nonguilt that the evidence presents a question for the trier of fact and will sustain a finding of guilt.

It seems to me a statement that an accused may be convicted "on the basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt" is incomplete and misleading unless it is accompanied by a statement which incorporates the requirement that, among permissible inferences, the inference of guilt must be stronger than any reasonable inference of nonguilt.