IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. STASKA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JACOB F. STASKA, APPELLANT.

Filed November 12, 2019.    No. A-19-117.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge. Affirmed.

Joseph L. Howard, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

PIRTLE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Following a jury trial, Jacob F. Staska was convicted of second degree assault, theft, and leaving the scene of a personal injury accident, but was acquitted of the charge of use of a deadly weapon to commit a felony. On appeal to this court, Staska argues (1) that the district court erred by accepting a legally inconsistent jury verdict, (2) that his trial counsel was ineffective in various ways, (3) that the evidence was insufficient to sustain his conviction of leaving the scene of a personal injury accident, and (4) that the court erred by giving an incomplete, incorrect, and misleading jury instruction on leaving the scene of a personal injury accident. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

On the evening of October 2, 2017, after a "senior night" softball game was cancelled, Garrett Walla drove his 1991 pickup truck to the Dairy Queen located in Wahoo, Nebraska. While seated in the Dairy Queen eating ice cream with his friends, Walla observed a man, later identified as Staska, approach the passenger side of his truck, move around the back of the truck, then approach the driver's side door. Walla then observed Staska get into Walla's unlocked truck.

Upon seeing Staska get into his truck, in which he had left the keys in the ignition, Walla jumped over the table where he had been seated and exited the back door of the Dairy Queen. By the time Walla reached his truck, the truck was already moving so he grabbed the driver's side door frame at the junction of the driver's side window which was completely down. At that time, Walla testified that he was only an "arm's length away" from Staska, who was now driving his truck and loudly yelled, "Hey, what are you doing? That's my fucking truck." Walla testified that although Staska did not acknowledge him and they did not make eye contact, Staska did make a side look, or glance, over his shoulder at Walla as Staska drove away. Walla estimated that he held onto the truck for about 2 seconds when he lost his balance, fell under the moving truck, and was run over by the rear driver's side tire. Walla estimated that the truck moved about 5 feet from the spot where he first grabbed it to the spot where he was run over. The truck ran over Walla, injuring his torso, arm, hand and legs.

Rick Driscoll testified that on the evening of October 2, 2017, he was in the Dairy Queen parking lot parked directly behind Walla's truck. Driscoll saw a man, later identified as Staska, walk up to Walla's truck, look in the passenger side window, and then proceed around the back of the truck while looking at Driscoll. Driscoll then stated that the man got into Walla's truck, started it, and began to drive away when a "frantic" Walla came out of the Dairy Queen and started pounding on the driver's side truck door. Driscoll stated that Walla made contact and held onto the truck for 3 to 4 seconds before falling to the ground after which Driscoll saw Walla get run over by the truck. Unlike Walla's testimony, Driscoll stated he believed the truck's driver's side window was closed; however, he acknowledged Walla had a better vantage point as to whether or not Walla was knocking on the window or something else. Driscoll testified that the man never exited the truck to see if Walla was okay.

Sydney Vanicek substantially corroborated Walla and Driscoll's testimony and added that she observed the truck rise up as it ran over Walla as if it ran over a curb.

Saunders County Sheriff's Deputy Jeff Hermanson testified that he was on duty the evening of October 2, 2017, when he received a call about the incident at the Dairy Queen and proceeded to that location. Upon arriving, Hermanson first obtained a description and witness' identification of Staska as a possible suspect. Hermanson testified that law enforcement was able to locate Walla's truck by "pinging" Walla's cell phone which Walla had left in his truck. Hermanson proceeded to the location where Walla's cell phone had been "pinged" which was near Staska's residence. Once he arrived at Staska's residence, Hermanson met Jody Fallon, who was Staska's "significant other," at the door and inquired about the missing truck. Hermanson testified that Fallon then went into the house, retrieved the keys to the truck, handed them to him, and indicated that the truck was "out back in the weeds." Hermanson testified that it appeared that the truck was being hidden in the 3- to 4-foot tall weeds, that there were areas nearby with stable ground and

without weeds where the truck could have been parked, and that the truck could not be observed from either the residence or the roadway.

Defense witness Fallon testified that she lived with Staska at her residence and that as of October 2, 2017, she owned a 1992 Chevrolet pickup truck that was in running condition. She further testified that, on October 2, she had driven herself and Staska to the grocery store in Wahoo, that they had gotten into an argument, and that she eventually left him at a gas station by driving away without telling him. Fallon testified that she had done this four to six times previously and that on those prior occasions, Staska would look for her in town and, if he found her, he would get into her vehicle and leave her stranded. She further testified that Wahoo is approximately 16 miles from her residence. On the evening of October 2, after she left Staska at the gas station (the evening of the alleged theft), Staska eventually arrived home and appeared surprised and said to her "How did you beat me home?"

Following jury deliberations, the jury convicted Staska of second degree assault, a Class IIA felony; theft by unlawful taking with a value of $500 or more but less than $1,500, a Class I misdemeanor; and leaving the scene of a personal injury accident, a Class IIIA felony. The jury acquitted Staska of use of deadly weapon to commit a felony. During sentencing, the court found that Staska was a habitual criminal, and pursuant to the statutory sentencing guidelines, sentenced Staska to 10 to 10 years' imprisonment for each of his felony convictions and 1 to 1 year's imprisonment for his misdemeanor conviction, with the sentences ordered to run concurrently and with credit for 253 days served. Staska has timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, Staska contends that (1) the district court erred in accepting a legally inconsistent jury verdict and by not acquitting him of second degree assault, (2) his trial counsel was ineffective in various ways, (3) the evidence was insufficient to support his conviction for leaving the scene of a personal injury accident, and (4) the district court erred in giving incomplete, incorrect, and misleading jury instructions regarding the charged offense of leaving the scene of a personal injury accident.

## STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed

most favorably to the State, is sufficient to support the conviction. *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019).

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision. *State v. Schmaltz*, 304 Neb. 74, 933 N.W.2d 435 (2019).

ANALYSIS

INCONSISTENT JURY VERDICT

Staska's first claim is that the district court erred in accepting a legally inconsistent jury verdict and by not acquitting him of second degree assault. He first argues that the jury's finding of not guilty regarding the charge of using a deadly weapon to commit a felony required the district court to acquit him of the charged offense of second degree assault. In connection with this assignment, Staska argues:

> As charged, Assault in the Second Degree, per Neb. Rev. Stat. § 28-309(1)(a) and Use of a Deadly Weapon to Commit a Felony, per Neb. Rev. Stat. § 28-1205(1)(b) are a compound offense, with interlocking essential elements. The acquittal on Count 2 and the guilty verdict on Count 1, is a true inconsistent jury verdict and cannot stand. The jury verdict is inconsistent as a matter of law because it is impossible to convict Staska [of Count 1] if he or she has been acquitted of [Count 2] the underlying predicate offense. Since the jury found that he did not use a deadly weapon, he legally could not have committed the Second Degree Assault.

Brief for appellant at 10.

In support of his theory, Staska cites to *State v. Halstead*, 791 N.W2d 805 (Iowa 2010), and urges this court to adopt the "minority rule" adopted by the Iowa Supreme Court as referenced by the Nebraska Supreme Court in *State v. Riley*, 281 Neb. 394, 410, 796 N.W.2d 371, 382 (2011), stating:

> We have stated that when acquittals and guilty verdicts on different counts in a multicount prosecution are asserted to be inconsistent, we cannot speculate as to the reason for a jury's verdicts and instead must consider only whether the evidence can sustain the convictions without speculating about the reason the jury acquitted the defendant of other charges. See *State v. Epp,* 278 Neb. 683, 773 N.W.2d 356 (2009). In addition, the U.S. Court of Appeals for the Eighth Circuit has stated that "a defendant may not challenge a conviction because it is inconsistent with another part of the jury's verdict." *U.S. v. Wisecarver,* 598 F.3d 982, 986 (8th Cir.2010). But see *State v. Halstead,* 791 N.W.2d 805 (Iowa 2010) (holding that in case involving conviction of compound felony, where compound felony and predicate felony are both charged, when defendant is acquitted of underlying predicate felony, conviction for compound felony cannot stand).

Here, we need not address the issue of an inconsistent verdict because the elements of second degree assault and use of a deadly weapon to commit a felony did not lead to an inconsistent verdict under these circumstances. As charged in the instant case, Staska committed the offense of second degree assault if he "[i]ntentionally or knowingly cause[d] bodily injury to another person with a *dangerous instrument*." See Neb. Rev. Stat. § 28-309(1)(a) (Reissue 2016) (emphasis supplied). Staska committed the offense of use of a deadly weapon to commit a felony if he "use[d] a firearm, a knife, brass or iron knuckles, or any other *deadly weapon* to commit any felony which may be prosecuted in a court of this state." See Neb. Rev. Stat. § 28-1205(1)(a) (Reissue 2016) (emphasis supplied).

Staska argues that, since the jury acquitted him of use of a deadly weapon to commit a felony, he legally could not have committed the offense of second degree assault. Staska's claim is based upon his argument that second degree assault and use of a deadly weapon to commit a felony "are a compound offense, with interlocking essential elements." Brief for appellant at 9. He claims that "in cases of legally interlocking charges, if the underlying felony was not proven, the interlocking charge could not stand." *Id.* at 12. Staska argues:

> Since Staska was acquitted of the charge of Use of a Deadly Weapon, he has legally been acquitted of the sixth element of Second Degree Assault, per the jury instruction, "(6) with a dangerous instrument - that is anything that is used or intended to be used in a way that could produce bodily injury."

*Id.* at 14-15.

However, contrary to Staska's argument, use of a deadly weapon to commit a felony required that Staska be found guilty of using a "deadly weapon" to commit a felony, whereas second degree assault merely required that Staska be found guilty of "intentionally or knowingly causing bodily injury with a dangerous instrument." Accordingly, Staska's argument that his conviction of second degree assault is inconsistent with his acquittal of use of a deadly weapon to commit a felony succeeds only if the terms "deadly weapon" and "dangerous instrument" mean the same thing. They do not. As defined by the trial court in the jury instructions, a "dangerous instrument" is "anything that is used or intended to be used in a way that could produce bodily injury," whereas a "deadly weapon" is "anything that could be used or intended to be used in a way that could produce death or serious bodily injury to commit the offense of Second Degree Assault, Count I." Pursuant to these definitions, it was not legally inconsistent for the jury to convict Staska of second degree assault while acquitting him of use of a deadly weapon to commit a felony. Further, contrary to Staska's argument, the felony predicate for the charge of use of a deadly weapon to commit a felony in this case was second degree assault. The jury instructions specifically identified second degree assault as the predicate felony for the compound offense of use of a deadly weapon to commit a felony. Thus, the trial court properly instructed the jury in that regard and there was no inconsistency in the jury's verdict. Accordingly, this assignment of error fails.

INEFFECTIVE ASSISTANCE OF COUNSEL

Staska next makes two separate assignments governing the ineffective assistance of his trial counsel. First, he assigns that trial counsel was ineffective and prejudiced Staska. Second, he

assigns that Staska received ineffective assistance of counsel when he was advised not to testify. We address these assignments independently.

As to Staska's first assignment of ineffective assistance of counsel, the Nebraska Supreme court recently held in *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019):

We have held that when raising an ineffective assistance claim on direct appeal, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. And we have long held that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. It follows that we should not have to scour the argument section of an appellant's brief to extract specific allegations of deficient performance. We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.

As to Staska's general assignment that his "[t]rial counsel was ineffective and prejudiced Staska," clearly said assignment is lacking in specificity it is not properly before this court, and we will not consider it.

Second, as to Staska's assignment that his trial counsel was ineffective for advising Staska not to testify, Staska argues that this advice was unreasonable under the circumstances in that Staska was unaware of Walla's presence when he was driving the truck and did not know that there had been an accident in relation to the felony charge of leaving the scene of a personal injury accident and Staska needed to explain that fact to the jury.

Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable. *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011); *State v. Interiano Alvarado*, 27 Neb. App. 334, 931 N.W.2d 463 (2019). The record does not contain the substance of counsel's advice and whether that advice was reasonable. Therefore, the record is insufficient to address this assigned error.

INSUFFICIENCY OF EVIDENCE

Staska next assigns as error that the evidence was insufficient to support his conviction for leaving the scene of a personal injury accident. Specifically, Staska argues that there was insufficient evidence to establish that he was aware of an accident or resulting injury. He argues that no rational trier of fact could have found, beyond a reasonable doubt, that he was aware that he was involved in a personal injury accident based on the evidence presented by the State. We disagree.

Neb. Rev. Stat. § 60-697 (Cum. Supp. 2018) provides:

(1) The driver of any vehicle involved in an accident upon either a public highway, private road, or private drive, resulting in injury or death to any person, shall (a) immediately stop such vehicle at the scene of such accident and ascertain the identity of all persons involved, (b) give his or her name and address and the license number of the vehicle and exhibit his or her operator's license to the person struck or the occupants of

any vehicle collided with, and (c) render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment if it is apparent that such treatment is necessary or is requested by the injured person.

(2) Any person violating any of the provisions of this section shall upon conviction thereof be punished as provided in section 60-698.

"Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." Neb. Rev. Stat. § 28-109(4) (Reissue 2016). "[K]nowledge that an accident has happened and that an injury has been inflicted is an essential element of the crime of leaving the scene of a personal injury accident." *State v. Snell*, 177 Neb. 396, 403, 128 N.W.2d 823, 828 (1964). Knowledge is a question of fact and not of law. *State v. Zimmerman*, 19 Neb. App. 451, 810 N.W.2d 167 (2012). Knowledge that an accident occurred may be proved by circumstantial evidence, and the fact finder may consider all of the facts and circumstances which are indicative of knowledge. *Id*.

When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019).

As to Staska's specific claim that there was insufficient evidence to support that he had knowledge of the personal injury accident, the evidence, when viewed in the light most favorable to the State, established that when Staska began to drive away, Walla ran out of the Dairy Queen, grabbed the truck at the junction of the retracted window, and frantically yelled at Staska, who was only an arm's length away, that Staska was driving Walla's truck. Although Walla acknowledged that Staska did not make direct eye contact with him, Walla testified that Staska glanced at him as he drove away from the pursuing Walla who had grabbed onto the truck. Walla and the other witnesses then described how Walla fell as Staska began to drive away and at least one witness described that the truck appeared to lift up as if the truck drove over a curb as Staska ran over Walla with the truck's back tire in his haste to get away. From the description of the witnesses, when Staska ran over Walla, the truck was not close to any curbs in the parking lot and certainly supported a version of the facts that Staska knew he ran over Walla in his attempt to get away. We hold that based upon this record, there was sufficient evidence for a rational fact finder to find that Staska had knowledge that he ran over Walla while fleeing in the stolen truck. Accordingly, this assignment of error fails.

JURY INSTRUCTIONS

Staska's final assignment of error is that the district court erred by giving incomplete, incorrect, and misleading jury instructions regarding the charged offense of leaving the scene of a personal injury accident. Specifically, he contends that the trial court erred in failing to include knowledge as an element of the offense of leaving the scene of a personal injury accident.

In providing the instruction, the court quoted directly the language of § 60-697 which we previously quoted in this opinion. Following the presentation of the evidence, there was a jury

instruction conference held outside the presence of the jury in which Staska's counsel neither objected to the instruction nor tendered an alternative instruction to the trial court. Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice. *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015).

In conducting a plain error review of this assignment of error, we note the district court used the language of § 60-697 in providing the instructions to the jury regarding the offense of leaving the scene of a personal injury accident. We further note that, in giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute. *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018). More specifically, in *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981), the defendant, who had been convicted of manslaughter, argued on appeal that the jury instructions given by the trial court were erroneous. However, the Nebraska Supreme Court rejected that argument, finding that absent a specific request, all that is required in a criminal case is for the trial court to instruct the jury in the language of the statute.

Because the district court in this case instructed the jury in the language of the statute, and because there was no objection or specific request otherwise, we hold there is no plain error by the district court in connection with this instruction.

## CONCLUSION

Having considered and rejected Staska's assigned errors, with the exception of his claim that his trial counsel was ineffective for advising him not to testify, which we found the record was insufficient to allow this court to address on direct appeal, Staska's convictions and sentences are affirmed.

AFFIRMED.